[Civ. No. 11133.  First Appellate District, Division Two.—May 3, 1940.]

YOSHIKO YAMAUCHI, Respondent, v. J. F. O'NEILL et al., Appellants.

Bronson, Bronson & McKinnon and O'Keefe & O'Keefe for Appellants.

J. E. McCurdy and J. W. Coleberd for Respondent.

SPENCE, J.—Plaintiff sought damages for personal injuries sustained through the negligence of defendants when a delivery truck owned by defendants O'Neill, doing business as Broadway Creameries, and operated by defendant McNally, their employee, struck and ran over plaintiff. A trial by jury was had and plaintiff recovered judgment in the sum of $3,000. Defendants appeal from said judgment.

The main issue discussed in the briefs is that of the status of plaintiff at the place of the accident, which accident occurred in a driveway leading into a court in the center of a business block in the city of San Mateo. Plaintiff was a customer of M. Daba & Co., one of the business houses in said block and she claims that her status was that of an invitee at the place of the accident. Defendants claim that plaintiff's status was that of a mere licensee. It therefore appears appropriate to summarize the evidence bearing upon said issue.

The entire business block, including the driveway and court, was owned by the Wisnom Company, which company leased the stores on the ground floor and some apartments on the second floor to various tenants. The block was bounded on the east by B Street and on the south by First Avenue. M. Daba & Co. leased the store on the corner of B Street and First Avenue. This store had a frontage amounting to approximately 28 feet on B Street, and the store of the defendants had approximately the same amount of frontage immediately to the north of the Daba store on B Street. The front entrances of both stores, which were the main entrances thereto, were located on B Street. The side of the Daba store ran approximately 80 feet along First Avenue to the driveway in question. This driveway was approximately 10 feet wide and was covered for approximately 30 or 35 feet by the second story of the building as it ran in a northerly direction to the open court in the center of the block. The Daba store had a rear entrance on the driveway and the defendants' store had a rear entrance on the court. The above-mentioned front and rear entrances constituted the only entrances to these two stores. The other stores had rear entrances on the court and there was also a rear entrance to the apartments from the court.

The driveway and court were customarily used in common by all of the tenants and those persons having business deal-

ings with said tenants. The lease of the defendants was admitted in evidence and it leased to said defendants their store "together with the right to use in common with other tenants of said lessor, the present driveway and alley way . . . for the purpose of obtaining ingress and egress from the demised premises, provided . . . that such driveway use shall be so limited and controlled by them so as not to interfere with the rights of other tenants of the said lessor to use the said driveway for the purpose of the business which the lessor may permit them to conduct thereon".

The driveway was used mainly for delivery purposes but it also appears that some of the tenants and the customers of the tenants made use thereof in going to and coming from the stores. Plaintiff had been a customer of M. Daba & Co. and its predecessor in the same location for many years prior to the accident. Plaintiff conducted a laundry on the south side of First Avenue at a point approximately opposite the driveway and it was her custom to enter the Daba store by the rear entrance located on the driveway. The manager of the lessor testified to the use of the driveway by the customers of the lessees and Mr. Daba testified that his customers, to the extent of an average of about 10 every day, entered his store from the driveway. Mr. Daba further testified that there had never been any barricades or chains across this driveway and that it had been open at all times for the use of anyone who wanted to go in or out. There were signs at the entrance to the driveway reading "Go Slow" and "Blow Your Horn".

Turning to the events of the day of the accident, the testimony shows that plaintiff had crossed First Avenue to the driveway and had entered the Daba store through the rear entrance and was in the act of returning to her place of business over the same route and was walking in the driveway toward the street when she was struck from the rear by defendants' panel delivery truck as it was backing out of the driveway. When plaintiff entered the rear door of the Daba store she noticed defendants' truck standing at the rear of defendants' store and she again noticed it at the same place as she left by said rear door. Said truck was headed north; the engine was not running; and plaintiff saw no one in the vicinity of the truck. The defendant McNally testified that he went out, got in the car, started the motor, put it in re-

verse, backed out, heard the plaintiff scream and stopped the car. He testified that he did not see plaintiff prior to the accident and it appears entirely probable that he was in the car ready to start it at the time that plaintiff emerged into the driveway from the Daba store. The construction of the panel delivery truck prevented him from obtaining a direct view of the driveway to the rear from the driver's seat and his only means of obtaining any view to the rear was by means of a rear view mirror supported on a bracket or prong on the left side of the truck. This mirror, however, afforded only a view of the left or west side of the driveway, it being impossible to obtain a view therein of the remaining portion of the driveway, including that portion in which plaintiff was walking. Said defendant admitted nevertheless that he proceeded to back said truck out through the driveway without sounding his horn or giving any warning to persons who might be endangered by this movement. Plaintiff did not see or hear the truck as it approached from the rear and she was struck down and run over while walking on the east side of said driveway at a point about six feet north of the sidewalk on First Avenue.

■ Defendants' main contention is that "Under the evidence plaintiff was at best a licensee and consequently the only duty owed was to refrain from any wilful or wanton conduct." We find no merit in this contention. It assumes that plaintiff was "at best a licensee". In our opinion this is an erroneous assumption as we believe that the uncontradicted evidence shows that plaintiff was an invitee rather than a licensee. We deem it unnecessary, however, to discuss this question at any length for even if it be assumed that plaintiff was a licensee, rather than an invitee, we believe that defendants' conclusion is based upon a general rule of law which has no application to the facts before us.

■ The rule upon which defendants rely finds expression in many of the authorities but it is limited in its application to cases dealing with the duty owed to a licensee with respect to the condition of the premises or, as sometimes expressed, to cases involving only passive negligence as distinguished from active negligence. The authorities may not be entirely in accord in determining what constitutes passive negligence and what constitutes active negligence but there can be no doubt whatever that the negligent operation of a moving ve-

hicle in a place where the operator has good reason to expect the presence of licensees constitutes active negligence as distinguished from passive negligence. Under such circumstances the duty owed by the operator of the moving vehicle to a licensee, whether such operator be the licensor or any other person, is not merely the duty to refrain from wilful or wanton conduct but is the duty to exercise ordinary care.

The distinction is clearly drawn with respect to cases involving active negligence in *Lucas* v. *Walker,* 22 Cal. App. 296, where the court said at page 301 [134 Pac. 374] :

"A licensee under such circumstances is entitled to recover for any injury to himself, in the absence of contributory negligence upon his part, resulting from the active negligence of the licensor, and such licensor is responsible in damages for any overt act of negligence though the same be neither wilful nor wanton.

"The cases cited by appellant in support of the proposition to the effect that a mere licensee can recover only for wilful or wanton injury, are all cases where the plaintiff was either a trespasser or mere licensee, and was injured solely by reason of the unsafe condition of the premises and without any active, or overt act of negligence, committed against him by the occupant or owner of the premises. (Citing authorities)."

The same distinction is made in *Herold* v. *Mathews Paint House,* 39 Cal. App. 489 [179 Pac. 414], in which the court cited with approval the case of *Lucas* v. *Walker, supra,* and said, "That rule, however, does not apply to a case where the licensee is upon the premises of a defendant and is injured by an overt act of negligence committed against him by the defendant. Where the injury results from such an act the licensor is responsible."

The above-mentioned cases are in line with the great weight of authority as shown by the cases collected in an annotation entitled, "Liability to trespasser or bare licensee as affected by distinction between active and passive negligence" found in 49 A. L. R. at page 778. There is also the recent case of *Babcock* v. *Nolton,* —— Nev. —— [71 Pac. (2d) 1051], in which the court said at page 1054, "There is no evidence of wilful or wanton negligence on the part of appellant's employee in backing the truck against respondent's car, but the evidence sustains lack of due care on his part, resulting in active negligence, for which appellant is liable. The great

weight of authority is to the effect that a person guilty of active negligence, as distinguished from passive negligence, is liable for resulting injury to a licensee.''

The foregoing authorities sufficiently distinguish most of the cases cited by defendants. Defendants also cite and rely upon *Hamakawa* v. *Crescent Wharf etc. Co.,* 4 Cal. (2d) 499 [50 Pac. (2d) 803], *Lindholm* v. *Northwestern Pac. R. R. Co.,* 79 Cal. App. 34 [248 Pac. 1033], and *Kirkpatrick* v. *Damianakes,* 15 Cal. App. (2d) 446 [59 Pac. (2d) 556]. Perhaps it is appropriate to refer briefly to these cases. The Hamakawa case was decided upon the ground that the plaintiff was upon a portion of the premises ''where he had no right to be and where the defendant did not know, and had no reason to expect him to be at the time he was injured''. (P. 503.) The Lindholm case was decided upon the ground that the plaintiff was on a portion of the premises ''where he was neither invited nor expected to go''. (P. 39.) That case distinguishes *Lucas* v. *Walker, supra,* and *Herold* v. *Mathews, supra,* stating that the last-mentioned cases were decided ''upon evidence that the licensor was or had good reason to be aware of the presence of the licensee in the place of danger''. (P. 40.) The Kirkpatrick case was decided upon the ground that plaintiff was a trespasser being on the premises without any permission, express or implied. Furthermore, it does not appear that the driver in that case was aware of the presence of the plaintiff or had any reason to expect plaintiff to be at the place where she was injured.

In the case before us plaintiff was in no sense a trespasser. She was admittedly either an invitee or a licensee and she was injured by the active negligence of defendants at a place where defendants had good reason to expect the presence of invitees and licensees. Under these circumstances, we believe the question of whether plaintiff was an invitee or licensee was wholly immaterial for in either case defendants owed to plaintiff the duty to exercise ordinary care in the operation of the delivery truck and could be held liable for their breach of that duty. (See *Pomponio* v. *New York, N. H. & H. R. R. Co.,* 66 Conn. 528 [34 Atl. 491, 50 Am. St. Rep. 124, 32 L. R. A. 530], cited with approval in *Lucas* v. *Walker, supra,* p. 302.) From what has been said, it follows that there is no merit in defendants' contentions that the trial court erred in denying their motion for a nonsuit and

their motion for a directed verdict. These motions were based upon the claim that there was no evidence of wilful or wanton conduct and therefore no evidence of any breach of duty toward plaintiff. It further follows that there was no error in refusing to submit to the jury the question of whether plaintiff's status was that of an invitee or a licensee as that issue was an immaterial issue.

Defendants further contend that the trial court erred in the giving and refusing of certain instructions to the jury. This contention involves several instructions relating to the issue of negligence. Our reading of these instructions leads us to the conclusion that there may be merit in the claim that the trial court committed error but we are still confronted with the question of whether the claimed error resulted in prejudice to the defendants.

It is not claimed that the evidence was insufficient to sustain the implied finding of negligence and in our opinion the evidence conclusively showed such negligence. As we view the record, the case was not a close one but on the contrary, we believe that the only reasonable conclusion which could have been drawn from the admitted facts was that the defendant driver was guilty of negligence which was the proximate cause of plaintiff's injuries. Under such circumstances, it cannot be said that the claimed error in the instructions relating to negligence was prejudicial and it is our duty to affirm the judgment by virtue of the mandate found in section 4½ of article VI of the Constitution.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 1, 1940.