[Civ. No. 13737. Second Dist., Div. Three. Apr. 29, 1943.]

WARREN DEMMON, Respondent, v. E. F. SMITH, Appellant; FIREMAN'S FUND INDEMNITY COMPANY (a Corporation), Lien Claimant and Respondent.

Donald E. Ruppé and C. W. Bowers for Appellant.

Steiner A. Larsen, Edwards & Taylor, Harvey D. Taylor and Clayton B. Thomas for Respondent.

WOOD (Parker), J.—Plaintiff obtained judgment against defendant for damages for personal injuries resulting from the alleged negligent handling of a butcher knife by defendant's employee, a butcher, when plaintiff was behind the counter of defendant's meat market as an invitee or licensee.

Defendant owned and operated a retail meat market which was one of several departments in a general retail food market operated by him in Los Angeles.

Another department of the general market, a coffee concession across an aisle from the meat market, was conducted by Manning's Coffee Company. Plaintiff was an employee of Manning's Coffee Company in that market and his duties included that of serving hot liquid coffee. He had been such employee about 3 months. During that time, and for at least 2 years prior thereto, the following custom prevailed: the employees of the meat market ordered cups of coffee from the employees of the coffee department during business hours and practically every day; the employees of the coffee department delivered the cups of coffee by placing them on the meat counter; the employees of the meat market paid for the coffee, and drank it when business was slack; the empty cups and the saucers were returned sometime during the day by handing them across the meat counter to the coffee employees or by taking them to the coffee counter if they had not been picked up by the coffee employees when night came; or, "as a rule" about once a day the coffee employees would go, at their convenience, behind the meat counter and get them from a shelf on the wall back of the meat counter or from a ledge on the inside of the counter, about 4 inches from the floor. The butcher, Lohman, referred to herein, knew that custom for at least 2 years. That practice was an arrangement between the meat market employees and the coffee department employees; however, the manager of the meat market had knowledge of such practice and on different occasions had seen plaintiff back of the meat counter picking up the cups and saucers. The manager did not discuss such practice with defendant Smith and defendant did not pay for the coffee or the service of it.

The front of the market building was on the north side of the building. The meat market was next to the east wall and extended from the front of the building to approximately the rear or south of the building. There was a rectangular refrigerator room in the southeast corner of the market. The meat counter extended the full length of the meat market, a distance of approximately 60 feet. The distance just referred to did not appear specifically in the evidence; however, three photographs of the meat market were received in evidence and there was testimony that one section of the counter,

shown in one of the photographs was 10 feet in length. A comparison of that section with other sections of the counter as shown in the exhibits indicates that the above mentioned estimates as to distances are reasonable deductions to be drawn from the evidence. The entrance to the area behind the meat counter was at the south end of the counter. Two of the several meat blocks back of the counter were north of the refrigerator room. There was a shelf, referred to as a "back bar," on the building wall back of the meat blocks. It extended from the north end of the meat market to the north end of the refrigerator, was about 18 inches wide, about four feet above the floor, and a few inches higher than the tops of the meat blocks. The distance between the front or north meat block and the meat counter was 3 feet. There was a ledge in the back part of the meat counter 4 inches from the floor. Above the ledge in the back part of the counter there was an open space wherein wrapping paper racks and miscellaneous articles were kept. "As a rule" the empty coffee cups and saucers were placed on that ledge and it was from there that the coffee employees picked them up. Sawdust was on the floor back of the counter.

The ten butchers employed by defendant in that market worked in two shifts and at the time of the accident 4 or 5 were on duty, but only one was in the area behind the counter. The others were on the other side of the refrigerator or in the back. The different kinds of meat were placed in particular sections of the meat counter show case and each butcher cut and prepared a particular kind of meat; however, in serving the customers, the butchers were not confined to one kind of meat or section of the counter, but they went "back and forth" to the different sections of the counter and by the different meat blocks.

On January 3, 1940, about 11 a.m. plaintiff went behind the meat counter to get the empty cups and saucers in which he had served coffee to defendant's employees that morning. At that time only one butcher was in the area behind the counter. He had ordered coffee that morning and it had been delivered to him by the plaintiff. He was cutting veal chops on the front or north meat block and was standing on the south side of the block facing the front or north side of the building. That block was opposite the center of the section of the counter known as the chops counter. Before plaintiff

went behind the counter to get the empty cups, that butcher had placed his empty cup and saucer on the ledge, near the bottom of the chops counter and to the left of the center of that counter. Therefore, that empty cup and saucer were approximately 3 feet to the left of the butcher as he stood at the front block. The blade of the knife he used was 10 inches long, ½ inch wide, and had a very sharp point. The handle of the knife was 5 inches long. The total length of the knife was 15 inches.

Concerning the accident and happenings immediately preceding it, the butcher testified: that he had obtained 6 pieces or racks of meat, which he was cutting into chops, from the refrigerator and had placed them on the back bar at a place thereon which was to his *right* and *behind* him as he stood at the block; that he put one of the racks on the block, cut it into chops, and placed the chops on the back bar at a place thereon to his right and in front of him, to clear the block for the next rack; that he then intended to make a complete turn to his *left* to get another rack or uncut piece of meat to put on the block, from the racks which were immediately to his *right* and behind him on the back bar; that he intended also in making the complete turn to his left to look for customers at the counter to his left; that he held the knife in his right hand with the point of the knife extending upward at an approximate angle of 30 degrees and turned to his *left* on the ball of his foot, "performed what is called half a pivot," made "probably a half-circle," and "as he turned, Mr. Demmon was there," and the point of the knife cut plaintiff's arm about 3 inches above the wrist; that if he had known plaintiff was there he would have held the point of the knife down; that plaintiff was about "half the space between the counter and the block" or 18 inches to his left and slightly behind him when the knife struck him; that when the knife cut plaintiff, the dishes plaintiff had been carrying fell to the floor; that preceding the time he pivoted he did not hear any noise of dishes and did not hear plaintiff approaching; and that it was the practice of the butchers in going along the counter to watch out for the butchers who were handling the tools.

When the butcher was a witness he demonstrated his standing position at the block, the location of the back bar, how

he held the knife, how he turned, and where plaintiff was when he was struck.

Concerning the accident and happenings immediately preceding it, plaintiff testified that he was walking north behind the counter to pick up the empty cups and saucers; that he had picked up 2 cups and saucers before the accident and had them in his right hand; that the butcher who was involved in the accident was the only person, other than plaintiff, behind the counter; that the butcher's back was toward plaintiff; that plaintiff saw and heard the butcher working at the block, cutting chops; that he noticed there were no customers at the counter; that as he proceeded along the counter he looked along the ledge or base of the counter for the cups, after he "realized Mr. Lohman [the butcher] was working at his block," and at the time of the accident he (plaintiff) was looking toward the ledge of the counter; that at the time the butcher made the "pivot" turn plaintiff was walking about 1½ or 2 feet from him and about 2 feet from the counter; that "just as I [plaintiff] got about opposite Mr. Lohman [the butcher] he suddenly turned, and the knife struck me in my right arm. The point of the knife"; and that no one ever objected to the fact that he went behind the counter to get the cups.

The trial court found that the butcher, Lohman, was the employee of defendant and was acting within the scope of said employment at the time plaintiff was cut with the knife; that at the time plaintiff was cut and for a long time prior thereto, it had been a common practice of defendant's employees in said meat market, including said butcher, Lohman, to order the service of coffee to them in said meat market, and for the employees of the coffee company, including plaintiff, to enter behind the meat counter for the purpose of recovering the empty cups theretofore delivered; that said practice was known to defendant; that plaintiff entered behind the meat counter on January 3, 1940, pursuant to said practice, for the purpose of recovering empty cups; that said butcher, Lohman, so negligently handled a sharp pointed knife that it struck and injured plaintiff; that the injuries sustained by plaintiff were the proximate result of the negligent handling of said knife by said butcher, and were the proximate result of the negligence of said butcher and the defendant; and that no negligence on the part of plaintiff caused or proximately contributed to plaintiff's injury.

Defendant contends that (1) defendant was not negligent; (2) plaintiff was a licensee and the only duty owed to him by defendant was to refrain from wilful injury; and (3) plaintiff was guilty of contributory negligence as a matter of law.

Concerning his first contention, defendant asserts that the butcher did not know, and the defendant did not know, plaintiff was behind the counter or near the butcher just prior to the accident, and that there was no reason to anticipate plaintiff's presence near the butcher; that the butcher knew he was on duty alone and the other butchers were in the rear of the market; that he was aware of the custom that the butchers "watch out for" the butcher using the tools; that the sawdust on the floor prevented the butcher from hearing the approach of anyone; and there was no fixed time when plaintiff would come behind the counter to recover the cups.

The butcher had been employed at least 2 years in the meat market referred to herein, and during that time he knew it was a prevailing custom for the employees of the coffee company to go behind the meat counter about once a day (but at no regular time during the day) to obtain the empty cups. He also knew that deliverymen and salesmen for meat companies, the owner of the market, and the market supervisor, went behind the meat counter at various times. He was required therefore to anticipate the presence of persons other than the other butchers behind the counter. The pieces of meat which he intended to cut into chops were on the back bar immediately to his right, and although it was necessary only for him to reach to his right in order to obtain another piece of uncut meat and place it on the meat block, he turned and pivoted to his left on the ball of his foot, intending to turn completely around to his left and obtain another piece of meat from the back bar and place it on the block. Instead of leaving the knife on the block as he turned, or holding the knife with its point extending downward, he held it in his right hand with its point extending upward at an approximate angle of 30 degrees and pivoted to the left until he had made a half-circle and struck plaintiff. He did not look to the left, or to the rear, or at all in the direction he intended to turn, before he started to pivot, and he did not see plaintiff until the injury occurred. He gave no warning of his intention to whirl or turn suddenly. In addition to the benefit of general observation of the witnesses while they were

testifying, the trial court had the benefit of the demonstration made by the butcher, when he was a witness, as to the manner in which he held the knife as he turned and as to the rapidity of the turn. Although the practice of ordering and furnishing coffee was an arrangement between the employees of the meat and coffee departments, and the defendant did not pay for the coffee or the service of it, defendant's manager of the meat department, who was not one of the butchers, had knowledge of such practice and had seen plaintiff on different occasions back of the meat counter picking up the empty cups. The finding of the trial court that the butcher and defendant were negligent should not be disturbed.

Defendant contends further that plaintiff was not an invitee but was a licensee and as such licensee the only duty owed by defendant to plaintiff was to refrain from wanton or wilful injury. If plaintiff was an invitee the defendant owed him the duty of exercising ordinary care to avoid injury to him. If plaintiff was a licensee the defendant owed him the duty of exercising ordinary care to avoid injury to him through active negligence, and that duty would have been breached if plaintiff was injured as a proximate result of defendant's active negligence as distinguished from passive negligence. It is not necessary, however, to determine whether plaintiff was an invitee, for the reason that the degree of care owed to plaintiff under the circumstances of this case, if he be regarded as a licensee (as defendant asserts he should be), is the same as if he be regarded as an invitee. The rule that the duty owed to a licensee is to refrain from wanton or wilful injury is a general rule which applies to cases relating to the duty owed to a licensee with respect to the condition of premises, that is to cases involving passive negligence as distinguished from active negligence. (*Colgrove* v. *Lompoc etc. Club*, (1941) 51 Cal.App.2d 18, 22 [124 P.2d 128]; *Yamauchi* v. *O'Neill*, (1940) 38 Cal.App.2d 703 [102 P.2d 365].) The rule as to the degree of care owed to a licensee injured by active negligence is that if the licensee was upon a part of the premises where the one who committed the overt act of negligence knew, or had good reason to expect, the licensee to be, the duty owed to the licensee was to exercise ordinary care to avoid injury to him. (*Colgrove* v. *Lompoc etc. Club, supra; Yamauchi* v. *O'Neill, supra.*) In the present case the injury resulted from a movement or overt

act performed by the butcher. Plaintiff was at least a licensee. As shown hereinabove, the butcher was required to anticipate, and he had good reason to expect, the presence of plaintiff behind the counter. The degree of care owed to plaintiff was ordinary care.

Defendant also contends that plaintiff was guilty of contributory negligence as a matter of law. His argument is that plaintiff could have avoided the injury by asking the butcher to hand the cups over the counter to him; and that plaintiff failed to keep a lookout for the butcher, and failed to give a warning of his presence. The empty cups were placed "as a rule" on the ledge in the back part of the counter about 4 inches from the floor, and it was from that ledge that plaintiff or other employees of the coffee department obtained the cups "as a rule" about once a day for at least 2 years. The matter of going behind the counter to obtain the cups on the occasion here involved was in keeping with that custom. The butcher knew of the custom. The fact that plaintiff went behind the counter to obtain the cups, rather than to ask for delivery of them over the counter, was not negligence. Plaintiff knew that the butcher was the only person, other than plaintiff, behind the counter. Before the accident plaintiff had gone about the length of the long counter and had picked up 2 cups and saucers. After he saw and heard the butcher working at the block, he looked along the ledge for cups and was looking toward the ledge at the time of the accident. The record does not show that plaintiff had had any previous experience while behind the counter or had made any observation, or had any information, by reason of which he should have anticipated that the butcher would suddenly whirl or pivot on the ball of his foot when he had a butcher knife in his hand, or that he would suddenly turn at all. As heretofore stated, the trial court had the benefit of the demonstration made in court by the butcher concerning the manner in which he stood at the block, turned, and held the knife. Whether a plaintiff has been guilty of negligence is usually a question of fact for the trier of the facts. It was said in *Crawford* v. *Southern Pacific Co.*, (1935) 2 Cal.2d 427 [45 P.2d 183], at page 429: "To establish the defense of contributory negligence as against the verdict of a jury, the evidence must be such that the appellate court can say that there is no substantial conflict on

the facts, and that from the facts reasonable men can draw but one inference, which inference points unerringly to the negligence of the plaintiff proximately contributing to his own injury." (Also *Bellon* v. *Silver Gate Theatres, Inc.,* (1935) 4 Cal.2d 1, 14 [47 P.2d 462].) It should not be concluded that plaintiff was guilty of contributory negligence as a matter of law.

The judgment is affirmed.

Shinn, Acting P. J., and Shaw, J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 24, 1943.