[Civ. No. 14736. Second Dist., Div. One. July 5, 1945.]

ROBERT FLICK, a Minor, etc., et al., Appellants, v. DUCEY & ATTWOOD ROCK COMPANY (a Corporation), Respondent.

Roland Maxwell for Appellants.

George P. Kinkle and John S. Hunt for Respondent.

DORAN, J.—This is an appeal from a judgment in favor of the defendant in an action for personal injuries sustained by Robert Flick, who at the time of the accident was a boy 15 years of age. The respondent had carried on a rock and gravel business near the city of Pasadena over a period of years and in connection therewith maintained a rock and gravel pit upon leased premises, which was reached by a private dirt road leading westerly from New York Avenue for about a quarter of a mile. This private road terminated in a wide level area on which were several buildings used by respondent, a rock crusher, equipment, and piles of gravel. Before reaching the pit the private road made a turn to the left and then to the right. While New York Avenue was a paved two-lane highway, this private roadway was a dirt road, not paved, narrow, and "it wasn't too rough." At its intersection with New York Avenue there was a sign reading either "Private Property" or "Personal Property" of the Ducey & Attwood Rock Co., which sign, however, was broken in two at the time in question. While no gravel was actually being removed from the pit at the time of the accident, the premises were in use by respondent for the sale of sand and gravel, and an office was maintained on the premises.

The accident occurred about 11 p. m. on the evening of March 19, 1943, when appellant Robert Flick and two other boys aged about 16 years, while riding in a 1931 Model A Ford roadster driven by one of the other boys, became lost and entered upon the above-described private roadway. The three boys, riding together in the front seat of the roadster, were proceeding home after having visited a skating rink and a bowling alley. Reaching a point on New York Avenue where such street was closed by a barricade, they turned around, "found this dirt road and started across" and after traveling some two or three blocks, the automobile toppled over into respondent's gravel pit, approximately 12 to 15 feet deep, at which place there was neither fence nor barricade. The boys knew that it was necessary to get across a certain "wash" in the vicinity in order to take one of them home, and with this in mind had turned westerly into the private road. Charles R. Coye, the driver of the car, testified that the headlights showed the roadway ahead with clear vision "up to 150 feet," and about 25 feet on either side. The speed of the automobile was estimated at "About 20 or 25 miles an hour" and the brakes were not applied. About a block before the automobile

fell into the pit, the boys were talking and the driver would turn his head to talk to the other two boys "a little bit," but thereafter was looking "straight ahead, I suppose." The car landed in the pit bottom side up and the three boys were pinned thereunder until rescued the next morning, from which accident the plaintiff suffered serious injuries. During the course of the trial, court was adjourned to the premises in question for a view of the private roadway and the conditions surrounding the scene of the accident. The trial court adopted the procedure of determining the question of liability before receiving evidence with respect to damages, and after hearing the evidence on this question concluded that there was no liability on the part of the defendant. In this connection the court found that the plaintiff's injuries "were the result of an unavoidable accident in so far as the defendant . . . was or is concerned"; further, "that the plaintiff Robert Flick did not exercise ordinary care, caution or prudence for his own welfare or safety, or to avoid the happening of said accident, and by his failure so to do thereby directly and proximately contributed to the happening of said alleged injuries." The court further found that "the plaintiff Robert Flick and the driver of the automobile in which said plaintiff was riding entered upon said defendant's premises without right or invitation and not upon any business connected with the defendant, and that they were trespassers upon said premises."

It is the appellant's contention that "The roadway being used at the time of the accident had a public character and, therefore, plaintiff, Robert Flick, and his companions, had a legal right to be thereon," and that the court erred in excluding offered evidence "tending to show public use of the road over a long period of years." After hearing the evidence and making a personal inspection of the roadway in question, the trial court found "that it is not true that said or any road or passageway leading from the public highway to the said gravel pit or to any portion of defendant's premises was open to the public generally or was open for travel by automobile, or otherwise, to plaintiff Robert Flick." There is nothing in the record to justify any other possible conclusion. As stated in the respondent's brief, "Appellants seek to make out of this private roadway . . . some sort of a mysterious 'in between' highway, which was not a public highway and yet had a 'public character', over which the public acquired an easement by prescription. In doing so they overlook the fact

that the accident happened upon the respondent's premises, and not upon the roadway, . . . Mr. Charles J. Burton, secretary of the defendant corporation, testified that the roadway from New York Avenue to the gravel pit had been in use "Not over five years," and the record discloses no evidence indicating that this roadway had ever been used for any purpose other than that of going to and from the defendant's place of business, with the exception that the Osborn Company, the owner of the land, also made use of it.

■ For the purpose of showing the alleged "public character" of the roadway, plaintiff's attorney made the following offer of proof: "If permitted to testify, it is my understanding that Mr. Raymond Coye would testify, . . . that as long as twenty years ago this road from North Avenue to New York Avenue was open to the public, and that he traveled over it at least as recently as five years ago." To sustain the contention that this evidence should have been admitted, appellants have quoted a portion of the syllabus from *People* v. *Power,* 38 Cal.App. 181 [175 P. 803], stating that ". . . roads may become public highways without any formal or express dedication, by long uninterrupted use and general acquiescence, prescription, or implied dedication, which may be presumed from long and continued adverse use." It is to be noted, however, that the witness' proffered testimony that the roadway in question "was open to the public," was a mere conclusion of law, and the further statement that the witness "traveled over it at least as recently as five years ago," would not establish the public character of the roadway, nor would it prove any "long continued use and general acquiescence, prescription, or implied dedication, which may be presumed from long and continued adverse use," within the meaning of the case just cited. There was therefore no error committed in the exclusion of the offered testimony.

■ The appellant maintains that the respondent "was clearly guilty of a violation of the requirements of Section 24400 of the Health and Safety Code," which reads as follows, "Every person owning or having charge of land on which is located any *abandoned* mining shaft, pit, or other *abandoned* excavation *dangerous to passers-by or live stock,* who fails to cover or fence it securely, and keep it so protected is guilty of a misdemeanor." (Italics added.) It is sufficient answer to this contention to point out that under the evidence as shown by the record, the respondent's property was far from "aban-

doned.'' According to the testimony of Mr. Burton, secretary of the respondent corporation, the ''plant'' had been closed for some six months before the accident but the business of selling rock, sand and gravel was being carried on and an office maintained at the gravel pit. It is also to be noted that Robert Flick was in no sense a ''passer-by'' entitled to the protection afforded by the quoted section of the Health and Safety Code;—he had entered upon a private road and traveled the distance of a quarter of a mile before the accident occurred. Appellants, seeking to bring themselves within the case of *Langazo* v. *San Joaquin Light & Power Corp.*, 32 Cal.App.2d 678 [90 P.2d 825], assert that because of such alleged violation the respondent should have been held liable despite the fact that the minor appellant was a trespasser. In that case plaintiff's son was electrocuted when he came in contact with a sagging telephone wire attached to the poles of defendant's power line, and there was evidence that defendant had failed to maintain the line as required by orders of the Railroad Commission, violations of such orders being considered negligence as a matter of law. It is at once seen that the Langazo case is in no way comparable to the present situation and is therefore not authority for appellant's argument.

The Langazo case, just cited, is also urged as authority for the point that ''The trial court erred in excluding consideration of the Quarry Safety Rules'' issued by the Industrial Accident Commission, rule 610, subdivision A, which provides, ''The sides of stairs, trestles, dangerous plank-walks, gangways, and platforms in and around the quarries shall be provided with hand and guard railing to prevent persons from falling over the sides.'' Again it is only necessary to point out that the Quarry Safety Rules quoted, can have no application to the facts of this case, the rules of the Industrial Accident Commission being intended to govern working conditions for employees, and appellants not being within the class intended to be benefited. The Langazo case does not, as claimed by appellants, ''involve the precise point raised'' but is, as heretofore pointed out, entirely dissimilar, and there was no error in the exclusion of the offered evidence.

It is next contended that ''Even though the roadway here involved is considered to be a private road, the defendant, nevertheless, owed a duty to the public which was violated by its maintenance of the unguarded pit.'' In respect thereto, the court is cited to the case of *Hanson* v. *Spokane*

*Val. Land & Water Co.* (1910), 58 Wash. 6 [107 P. 863, 865], in which the following statement occurs, quoted from Wharton's Law of Negligence, "Nor am I justified in making excavations either on the path which I have permitted other persons to traverse, *or so near a public road that travelers, in the ordinary aberration or casualties of travel,* may stray or be driven over the line and be injured by falling into the excavation." (As italicized by appellants.) Such quotation, however, contains only a portion of the rule, and the part not quoted by appellants is that which is directly applicable to the present situation, namely, "But beyond this liability to trespassers, *voluntary or involuntary,* does not go. I may make what excavations I choose on my own land, without fencing them in, providing they are not on a line over which I permit travelers to pass, or so near a public road that in them a traveler may unwittingly fall." (Italics added.) Furthermore, the Hanson case involved a situation where the defendant knew that persons were making use of his roadway, whereas, in the case at bar the record discloses no evidence as to knowledge of user by persons other than customers and employees of respondent company and the owner of the real estate. The gravel pit in question was not near a public road but was removed a distance of about one-quarter of a mile from New York Avenue. The cited case is not applicable to the present situation, and appellants' contention in this regard is without merit.

It is argued by appellants that the "Plaintiff, Robert Flick, had the status of an invitee," this argument being founded on the proposition that "An invitation may be implied" from the appearances in the particular case. On the other hand, the respondent claims that the boy's status was that of a trespasser, and that such status was not affected by the fact that the trespass was unintentional. It is not disputed that an invitation may be implied under certain circumstances, but appellants' argument that there was any such implication in the present case is not persuasive. The testimony of the plaintiff, Robert Flick, is illuminative on this point:

"Q. By Mr. Hunt: The sole purpose of your going down to this side road was to get home, wasn't it?

"A. Yes.

"Q. You didn't have any business with the Ducey-Attwood Company then, did you?

"A. No."

There was, therefore, nothing in the nature of a "business invitation" upon which appellants could rely. Nor is any other circumstance pointed out which would give rise to a reasonable implication of invitation to enter upon the respondent's premises. The language used in *Kirkpatrick* v. *Damianakes*, 15 Cal.App.2d 446, 449 [59 P.2d 556] is applicable to the case at bar, "There can be no doubt about plaintiff's status under the undisputed evidence. She entered upon the property of another without right and without any express or implied invitation or permission. . . . She was driving for her own purposes and her own convenience and was given no express or implied assurance or safety from anyone when entering upon said private alley. She was therefore a trespasser. (45 C.J. 740.) The mere fact that she entered the private alley by mistake did not alter her status. As is said in a note in 41 A.L.R., at page 1430, 'It seems to be the well settled rule that one who, through mistake, enters on private premises, occupies the status of trespasser. . . .' It is therefore clear that the only duty of the owner or tenant of the property was to abstain from wilfully or wantonly injuring plaintiff. (*Giannini* v. *Campodonico*, 176 Cal. 548 [169 P. 80].)" Likewise in the instant case, Robert Flick and his companions entered the respondent's premises for purposes of their own, to wit, to get home, and the fact that the boys turned into this private road by mistake, does not excuse the trespass nor change the rules which govern liability to a trespasser. Thus, it can only be said that this appellant trespassed upon the premises, unknown to the respondent.

Appellants' statement that "The gravel pit constituted a trap and it was, therefore, a liability to plaintiff, Robert Flick, even though his status was that of a trespasser," is without substantial merit. In support of this contention appellants refer to the case of *Blaylock* v. *Jensen*, 44 Cal.App. 2d 850 [113 P.2d 256], holding that a land owner may be liable where a child becomes mired in an oil sump located about 20 or 30 feet from the paved highway; and *Boyce* v. *San Diego High School District*, 215 Cal. 293 [10 P.2d 62], where plaintiff, while inspecting an air corridor at defendant's request, fell into a pit which was not protected by a guard rail. A reading of these cases fails to disclose any point of similarity in reference to the manner in which appellant's accident occurred, and they constitute no authority for holding that the respondent's gravel pit was in any sense a trap.

■ The final point for consideration urged by the appellants is that there is no evidence to support the trial court's finding that Robert Flick was guilty of contributory negligence. In connection with such finding and in refutation of appellants' statement that the evidence failed to show anything which would constitute notice to the boys of the presence of an unguarded pit, the court found in paragraph IV of the Findings of Fact, "that it is not true that the operator of said automobile in which plaintiff Robert Flick was riding, or the plaintiff Robert Flick, was not given any warning of danger or peril or any notice that said road or passageway was private property; it is true that said structures described in paragraph II hereof themselves gave plaintiff notice that he was on private property; . . ." Paragraph II of the findings states: "it is also true that in the immediate vicinity within a fifty to seventy-five foot radius there were rock crushers, elevators, sand and rock piles and other structures usually found in connection with gravel pits, all in plain and unobstructed view of plaintiff and giving him abundant warning of the character of the premises and putting him upon notice to proceed with care and circumspection." Ample evidence is found in the record to support this and all of the findings, and to indicate that Robert Flick and the other boys were guilty of negligence which contributed to, if it did not entirely cause, the accident in question. Any other judgment than that rendered would have been directly opposed to the evidence and contrary to law. ■ Likewise, any decision other than an affirmance of that judgment would establish a precedent requiring every owner of property and every lessee thereof, to fence the land and barricade any depression or dangerous instrumentality thereon, against the remote possibility that some person, by mistake or otherwise, might wander from a public highway however distant, and receive injury on the defendant's premises. Appellants have cited no case which suggests such a doctrine, and such is not the law.

No error appearing in the record, the judgment is affirmed.

York, P. J., and Drapeau, J. pro tem., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 27, 1945. Carter, J., and Schauer, J., voted for a hearing.