[L. A. No. 22604.   In Bank.   June 25, 1954.]

RICHARD L. PALMQUIST, Appellant, v. H. W. MERCER et al., Respondents.

Fred N. Howser, Russell H. Pray and Eric A. Rose for Appellant.

Parker, Stanbury, Reese & McGee and Richard E. Reese for Respondent Mercer.

Ball, Hunt & Hart, and Clarence S. Hunt for Respondent Union Oil Company.

Moss, Lyon & Dunn, Sidney A. Moss and Henry F. Walker for Respondent Tide Water Associated Oil Company.

SPENCE, J.—Plaintiff sought damages for personal injuries sustained by him while riding a horse which he had rented from a riding academy. At the close of plaintiff's case, the court granted defendants' motions for nonsuit, and plaintiff appeals from the judgment subsequently entered. Upon consideration of the record, we have concluded that plaintiff's evidence was sufficient to require submission of the case to the jury as to defendant Mercer, who was the owner of the riding academy, but that the nonsuit was properly granted as to the other defendants.

██ A motion for nonsuit may properly be granted ". . . when, and only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff." (*Card* v. *Boms,* 210 Cal. 200, 202 [291 P. 190]; see also *Blumberg* v. *M. & T. Inc.,* 34 Cal.2d 226, 229 [209 P.2d 1]; *Golceff* v. *Sugarman,* 36 Cal.2d 152, 153 [222 P.2d 665].) ██ "Unless it can be said as a matter of law, that . . . no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury." (*Estate of Lances,* 216 Cal. 397, 400 [14 P.2d 768]; see also *Raber* v. *Tumin,* 36 Cal.2d 654, 656 [226 P.2d 574].)

On October 10, 1950, plaintiff and his wife visited defendant Mercer's riding academy at 223d Street and Golden Avenue in the city of Long Beach. Plaintiff told the attendant that they would like to rent two horses and asked for "a couple of old nags." He explained that he had not been on

a horse in six or seven years, that his companion had never previously ridden at any time, and that they would like "tame and gentle horses." The attendant said that he would "fix them up" and asked plaintiff to come into the office. Plaintiff there signed the register pad, as requested, and then followed the attendant out of the room. He was in the office approximately fifteen seconds. He did not read the paper that he signed, a printed form which was introduced at the trial as Exhibit D and which contained a general release of the academy from any liability. Plaintiff was not requested to read the form nor were its provisions called to his attention, but neither was he prevented from reading it.

After again discussing plaintiff's need for "gentle" horses, the attendant chose a horse named "Doc" for plaintiff and another horse for plaintiff's wife. At the time plaintiff mounted "Doc," the horse was feeding at a trough. When plaintiff tried to get the horse to move away, it refused to respond to his reining, and it was necessary for the attendant to lead the horse from the trough. The attendant told plaintiff to go north on Golden Avenue, west on 223d Street, and then north again under a pipe trestle. The horses proceeded out of the driveway and at Golden and 223d Street, the horses, of their own accord, turned east. After going some thirty feet, plaintiff and his wife succeeded in turning the horses west. They continued a short distance, when the horses, again of their own accord, turned into a stable, walked to a water trough, began drinking, and for a time could not be guided away as plaintiff pulled on the left rein. Finally, the horses, plaintiff's mount in the lead, left the trough of their own volation and retraced the way to the riding academy. Plaintiff told the attendant that they were having trouble managing their horses. Upon reassuring them that "there was nothing wrong with the horses," the attendant gave a demonstration of how to direct the horses by use of the reins. He then accompanied them back to the intersection of Golden and 223d Street, and then west on 223d Street until they were opposite a pipe line trestle located on the north side of the street. There was a road going west under the trestle and then making a bend and proceeding in a northerly direction. The attendant told them to bend over going under the trestle and then to ride as far as they liked.

The trestle traverses the Los Angeles River in an east-west direction and carries oil pipe lines of defendants Union Oil Company of California and Tide Water Associated Oil

Company. It was built and maintained with permission from the Los Angeles Flood Control District, on public property under the control of the district.

Plaintiff and his wife rode under the trestle along the indicated road, with plaintiff's horse in the lead. After proceeding about 400 feet to the north at a walk, plaintiff turned his head to the left and called to his wife. As he made this movement, plaintiff's horse suddenly reeled about to the left and began racing back on the road toward the trestle, gaining speed as it went. Plaintiff attempted in vain to control or stop the horse by pulling back on the reins as hard as he could with both hands, but the horse kept going faster, passed plaintiff's wife and ran around the bend in the road towards the trestle. Immediately before the accident and at a distance of some 8 to 10 feet from the trestle, plaintiff noticed some underhanging beams stretching over the traveled area at a height of about 6 feet. Plaintiff was then lying flat in the saddle, with his head held down as far to the right as he could get it and his left shoulder pointing upwards. His left shoulder and neck hit a stationary object such as the understructure of the pipe trestle, and plaintiff blacked out. When he regained consciousness he was lying immediately to the south of the pipe trestle, approximately 5 feet from the nearest substructure of the trestle and immediately south of the traveled area under the trestle. As a result of the accident, plaintiff is permanently paralyzed from the waist down.

Plaintiff, who was 21 years of age when the accident occurred, sought damages from defendants Mercer, owner of the riding academy and stables; the Union Oil Company, owner of the trestle; and Tide Water Associated Oil Company, which maintained a pipe line upon the trestle. Plaintiff's complaint rests on two theories of recovery: breach of warranty and negligence. The breach of warranty cause of action is directed only against defendant Mercer and is based on the alleged unsuitability of the horse rented to plaintiff in view of plaintiff's disclosed inexperience in riding. The negligence cause of action is directed against all three defendants: against Mercer in assigning to plaintiff a horse allegedly known to be both dangerous and unmanageable, and in telling plaintiff to ride along what appeared to be a public road whereon a hazardous condition existed, and against the two oil companies in maintaining a hazardous condition, the trestle, without providing reasonably effective safeguards. By separate answer defendant Mercer denied plaintiff's charges of breach

of warranty and negligence, and he pleaded as an affirmative defense that plaintiff failed to exercise ordinary care in the control of his horse and in observing the route over which he was traveling. Upon stipulation of the parties, defendant Mercer filed an amendment to his answer setting up as a second affirmative defense the written release of the riding academy signed by plaintiff. The oil companies in their answers denied plaintiff's charges of negligence and pleaded that any injuries sustained by plaintiff were caused by his own lack of ordinary care. At the close of plaintiff's case, the respective defendants successfully moved for a nonsuit: Mercer on the ground that the release of the riding academy constituted a bar to plaintiff's recovery from him as a matter of law; and the two oil companies on the ground of insufficiency of the evidence to impose liability upon them.

In support of the nonsuit exonerating him from liability, defendant Mercer relies on the release signed by plaintiff at the time of hiring the horses. It stated that plaintiff did "fully and forever release and discharge the Equestrotel Riding Academy and the operators thereof from any and all claims, demands, damages, rights of action or causes of action on account of either known or unknown, concealed or hidden, external or internal, personal, physical injuries, damages or causes, or otherwise, or damages or injuries of every kind and character resulting from, or which may result from or during the rental time therein provided, either directly or indirectly. . . . I expressly rent the horse at my own risk and assume full responsibility for all matters resulting from or that may occur by reason thereof and agree to pay the rental charges on demand." Admittedly plaintiff was not prevented from reading the release, and whether he did or not would be immaterial. ██ As stated in *Smith* v. *Occidental & Oriental Steamship Co.*, 99 Cal. 462, at pages 470-471 [34 P. 84] : "The general rule is that when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents, and is estopped from saying that its provisions are contrary to his intentions or understanding." (See also *Nichols* v. *Hitchcock Motor Co.*, 22 Cal.App.2d 151, 153 et seq. [70 P.2d 654].)

Plaintiff maintains that the question of validity of the release should have been submitted to the jury as a factual issue to be determined in the light of the circumstances surrounding its execution. His theory of recovery against Mercer sustains his position.

■ ''[I]n a contract of hiring of a horse for riding purposes, in the absence of any notice to the contrary there is contained an implied warranty to the rider that the stable-keeper knows or has exercised reasonable care to ascertain the habits of the horse and that the animal is safe and suitable for the purpose for which the keeper hires the horse to the renter thereof.'' (*Kersten* v. *Young,* 52 Cal.App.2d 1, 6 [125 P.2d 501].) ■ It is the duty of a stablekeeper to inform himself of the habits and disposition of the horses which he keeps in his stable for hire, and if he knows that they are dangerous or unsuitable, or by the exercise of reasonable care could ascertain the fact, he is liable for any injuries to a customer resulting from their vicious propensities. (*Dam* v. *Lake Aliso Riding School,* 6 Cal.2d 395, 399-400 [57 P.2d 1315]; *O'Brien* v. *Gateway Stables,* 104 Cal.App.2d 317, 320 [231 P.2d 524]; *Conn* v. *Hunsberger,* 224 Pa. 154 [73 A. 324, 326, 132 Am.St.Rep. 770, 16 Ann.Cas. 504, 25 L.R.A.N.S. 372].)

■ Here there was evidence that Mercer knew that the horse ''Doc,'' when rented to plaintiff, was not ''tame and gentle'' but was high-spirited, headstrong, difficult to control, had a ''tough mouth,'' and was not suitable for an inexperienced rider. The manager of the academy at the time ''Doc'' was acquired in June, 1950, and until the following September, testified that on several occasions during that period he had told Mercer these facts in reporting the accounts of various riders in their attempts to handle ''Doc''; that he had also told Mercer that ''Doc'' was ''barn sour'' (i.e. disliked leaving the stable and when away, had a tendency to return quickly of his own volition) and he had advised Mercer to get rid of the horse, that ''Doc'' should not be on the rental string because he wasn't trustworthy. There was further evidence that on a number of occasions prior to plaintiff's accident (October 10, 1950) ''Doc'' had bolted with his riders, one person testifying that she suffered severe injuries as the result of being thrown from the saddle and another witness, an experienced rider, testifying that she had considerable difficulty in keeping the horse under control. The various riders reported these incidents to the manager of the riding academy. In such circumstances, the matter of whether at the time and place in question the horse ''Doc'' was unsafe or unsuitable for the purpose for which he was hired would be for the jury to determine. ■ Likewise for determination of the jury as questions of fact under all the cir-

cumstances were the matters of plaintiff's contributory negligence and assumption of risk. (*Kersten* v. *Young, supra,* 52 Cal.App.2d 1, 8.)

Plaintiff properly maintains that the evidence presents the further issue of whether there was fraud or misrepresentation on the part of Mercer in causing plaintiff to sign a release absolving the academy from all liability when Mercer knew of plaintiff's inexperience—as plaintiff had so advised the attendant at the academy in asking for "tame and gentle horses" (*Clowdis* v. *Fresno Flume etc. Co.,* 118 Cal. 315, 321 [50 P. 373, 62 Am.St.Rep. 238])—and of the dangerous propensities of the horse "Doc," which nevertheless was assigned to plaintiff. "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud . . . are against the policy of the law." (Civ. Code, § 1668.) The failure to disclose material facts affecting the essence of the agreement may constitute "actual fraud," vitiating the contract. (Civ. Code, § 1572; see Rest., Contracts, § 471.) Mercer unavailingly argues that the release signed by plaintiff is binding as a matter of law under the decision in *Werner* v. *Knoll,* 89 Cal.App.2d 474 [201 P.2d 45], recognizing that "contracts seeking to relieve individuals from the results of their own negligence are not invalid as against the policy of the law." (P. 476.) The record there presented no question as to the effectiveness of a release purporting to exempt one from liability "for his own fraud." (P. 477.) Actual fraud is a question of fact (Civ. Code, § 1574); and like any other fact, it may be proved by circumstantial evidence. (12 Cal. Jur., § 78, p. 829.) The record here contains ample evidence to sustain a finding of fraud on the part of defendant Mercer, and the trial court erred in withdrawing that issue from the jury. (See *Wilson* v. *San Francisco-Oakland T. Rys.,* 48 Cal.App. 343, 349-350 [191 P. 975].)

However, there is no evidence which would sustain plaintiff's claim against the two defendant oil companies, and the nonsuits were properly granted as to them. Plaintiff argues these theories of liability on this phase of the case: that the place of the accident was a public roadway and the trestle maintained thereon by the oil companies constituted a public nuisance; but in any event, they were chargeable with the consequences of any injuries allegedly caused by their negligent maintenance of the trestle.

Plaintiff concedes that the accident occurred on property controlled by the Los Angeles Flood Control District. The

trestle was constructed in 1922 by defendant Union Oil Company pursuant to permission of the flood control district. A variance in construction from the plans originally approved by the district resulted in an overhang of some 2 feet 4½ inches lower than authorized. This was known to the district and apparently the trestle had been accepted as constructed. Thus during the following years and prior to the date of the accident (October 10, 1950), Union Oil Company had from time to time notified the district of the necessity of repairing the trestle and had so proceeded upon receiving permission from the district contingent upon the work not changing the then existing clearance so as to impede or obstruct the run-off of flood waters. For some 12 years or more preceding plaintiff's accident, people had indiscriminately entered the general area of the flood control channel, riding about on horseback, crossing underneath the trestle at various points, and there was a well-defined path at the place where the accident happened. Other accidents had occurred there and the Union Oil Company had knowledge thereof. In fact, in 1941, upon being notified of one such incident, it had posted signs on the trestle: "Warning to Horseback Riders, Low Clearance."

Plaintiff argues that the trestle obstructed the public's "free passage or use, in the customary manner," of the crossing beneath and therefore constituted a "public nuisance." But it indisputably appears that the trestle was not on a public street or highway, as required by the statutory sections cited by plaintiff. (Civ. Code, §§ 3479-3480.) The trestle therefore could not be characterized as a nuisance. (*Barrett* v. *Southern Pac. Co.*, 207 Cal. 154, 160 [277 P. 481]; *Gerberich* v. *Southern Calif. Edison Co.*, 5 Cal.2d 46, 50 [53 P.2d 948].)

Nor does it appear that Union Oil Company breached any duty owing to plaintiff by reason of its maintenance of the trestle. In exercising its right to maintain the trestle, Union Oil Company was acting by express permission of the flood control district, like the holder of a franchise. (See *City of Oakland* v. *Hogan*, 41 Cal.App.2d 333, 346-347 [106 P.2d 987].) As such, its status was akin to that of the legal possessor of property, having no greater duty or obligation than the landowner with respect to the condition of the property in relation to a person coming on the property either as a trespasser or licensee. (*Lindholm* v. *Northwestern Pac. R. Co.*, 79 Cal.App. 34, 40 [248 P. 1033]; 65 C.J.S.

p. 501.) In other words, Union Oil Company was using the premises as a matter of right as against plaintiff's use by sufferance; and whether plaintiff be viewed as a trespasser or a licensee, the Union Oil Company owed him only the duty of refraining from wanton or wilful injury. (*Oettinger* v. *Stewart*, 24 Cal.2d 133, 137 et seq. [148 P.2d 19, 156 A.L.R. 1221]; *Demmon* v. *Smith*, 58 Cal.App.2d 425, 432 [136 P.2d 660].) ■■■ The fact that plaintiff entered upon the property in question, crossing under the trestle at the suggestion of the riding academy's attendant (*Giannini* v. *Campodonico*, 176 Cal. 548, 550-551 [169 P. 80]; *Powers* v. *Raymond*, 197 Cal. 126, 131 [239 P. 1069]) or assumed, contrary to the fact, that he was traveling a public road in proceeding under the trestle (*Kirkpatrick* v. *Damianakes*, 15 Cal.App.2d 446, 449 [59 P.2d 556]; *Flick* v. *Ducey & Attwood Rock Co.*, 70 Cal.App.2d 70, 78 [160 P.2d 569]) would not alter his status nor change the rules governing the duty owed by Union Oil Company to plaintiff with respect to the condition of the premises. ■■■ Plaintiff was obliged to take the premises as he found them insofar as any alleged defective condition thereon might exist. (*Oettinger* v. *Stewart, supra*, 24 Cal.2d 133, 138.)

Plaintiff relies upon numerous cases in support of his claim that since the Union Oil Company had knowledge of prior accidents in the general area where plaintiff was injured, it was obligated to correct any dangerous or defective condition there existing. However, the cases cited by plaintiff are not in point, for in the main they concern dangerous conditions in structures over or on public streets and highways. (*E.g., Shea* v. *City of San Bernardino*, 7 Cal.2d 688 [62 P.2d 365]; *Sandstoe* v. *Atchison T. & S. F. Ry. Co.*, 28 Cal. App.2d 215 [82 P.2d 216]; *Gibson* v. *Garcia*, 96 Cal.App.2d 681 [216 P.2d 119]; *Postal Tel. Cable Co.* v. *Young*, 172 Ky. 576 [189 S.W. 707].)

Plaintiff argues the further point that the alleged negligent maintenance of the trestle was a question for the jury to decide, citing *Davoust* v. *City of Alameda*, 149 Cal. 69 [84 P. 760, 9 Ann.Cas. 847, 7 L.R.A.N.S. 536], and *Davis* v. *Pacific Power Co.*, 107 Cal. 563 [40 P. 950, 48 Am.St.Rep. 156]. Both cases are clearly distinguishable on their facts. In the Davoust case plaintiff, a licensee walking along a path across a vacant lot, was killed upon coming in contact with a live wire from an electric plant belonging to defendant, a trespasser on the property. There was no discussion of liability between the parties had defendant been using the

property as a matter of right. (P. 74.) In the Davis case the trial court submitted to the jury the question of whether or not defendant, erector of a revolving shaft which caused injuries to plaintiff, had permission from the lessee, the admitted possessor of the premises, to be on the premises. The evidence was in conflict, and the jury awarded damages to plaintiff based upon the finding that defendant had no such permission. Furthermore, defendant there was chargeable with active negligence in the operation of the dangerous machinery which caused plaintiff's injuries. (See Prosser on Torts [1941] 630, quoted with approval in *Oettinger* v. *Stewart, supra,* 24 Cal.2d 133, 138.) Here defendant Union Oil Company constructed and maintained the trestle under express permit of the flood control district, and there was no evidence whatever of any active negligence on its part. Under the principles of liability above discussed, it owed no greater duty to plaintiff than did the district, the owner of the property, with respect to the condition of the premises. Accordingly, the nonsuit was properly granted as to defendant Union Oil Company.

Similarly, the record furnishes no support to plaintiff's claim of liability against defendant Tide Water Associated Oil Company. In 1936 Union Oil Company gave Tide Water Associated permission to place and maintain one pipe line upon the trestle. Under their agreement, cost of maintaining the trestle was divided between the two oil companies, but all control over maintenance, operation and repair of the trestle was retained by Union Oil Company. In view of our conclusion that the evidence was insufficient to impose liability upon defendant Union Oil Company, it necessarily follows that such evidence was likewise insufficient to impose liability upon defendant Tide Water Associated Oil Company.

The judgment of nonsuit is reversed as to defendant Mercer but affirmed as to defendants Union Oil Company and Tide Water Associated Oil Company.

Shenk, Acting C. J., Edmonds, J., and Bray, J. pro tem.,* concurred.

Traynor, J., concurred in the judgment.

CARTER, J.—I concur in the judgment of reversal. However, the rule applicable to gratuitous licenses should not be as stated in the majority opinion.

*Assigned by Chairman of Judicial Council.

It is not good law nor in keeping with the modern trend of decisions, to say, as does the majority, that the owner of property is liable only for wanton and wilful conduct as to gratuitous licensees (persons who are on the property with implied or express consent of the owner but not as business visitors in whose presence he has an economic interest) with respect to the dangerous condition of his property as distinguished from activity thereon by him, even though he had actual knowledge of the dangerous condition. Where an owner has *actual knowledge* of a dangerous condition on his property, his duty should be ordinary care toward gratuitous licensees and he would have to at least warn of the danger. Such licensee would still be in a category different from a business visitor, because as to the latter, the owner must not only guard against known dangers but also those which would have been revealed by reasonable inspection, that is, those he should have known of in the exercise of ordinary care. This is the rule in the Restatement. "A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he

"(a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and

"(b) invites or permits them to enter or remain upon the land, without exercising reasonable care

"(i) to make the condition reasonably safe, or

"(ii) to warn them of the condition and the risk involved therein." (Rest. Torts, § 342.)

Also, our statutes read: "Everyone is responsible, *not only* for the result of his *willful acts,* but *also* for an injury occasioned to another *by his want of ordinary care* or skill *in the management of his property* or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself." (Emphasis added; Civ. Code, § 1714.) And the District Court of Appeal has said: "The law in reference to the duty owed to trespassers, licensees and invitees has largely developed in reference to the duty of an owner or occupier of real property or structures thereon. The statutes of this state do not provide that a different duty is owed to persons in the three named categories. The only relevant statute is section 1714 of the Civil Code, which provides: 'Everyone is responsible, not only for the result of his wilful acts, but also for an injury occa-

sioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, wilfully or by want of ordinary care, brought the injury upon himself.' In spite of this code section, which has been in our law unchanged since 1872, and which states a civil law and not a common-law principle (Code Napoleon, § 1383; Louisiana Code (1808), § 2215), our courts, in some cases at least, and in apparent disregard of the section, have followed the common-law rule, which purports to make precise and rigid distinctions as to the duty owed by the owner or occupier to invitees, licensees and trespassers. Thus, it has been stated that towards a trespasser the owner or occupier only owes a duty to refrain from wilful or wanton conduct; towards a licensee a similar duty, plus the affirmative duty to warn of unusual dangers, while towards an invitee there is the duty to exercise ordinary care and prudence. (See cases collected 13 Cal.L.Rev. 72, 73, footnotes 5, 6 and 7.) Such an approach requires a court to first determine the precise status of the visitor, which is sometimes a most difficult task, and then to determine from the cases whether the owner has violated any duty owed to a member of such a class. Such an approach is unrealistic, arbitrary, and inelastic. The point where the duties towards members of each of the classes begins or ends or where it should begin or end, or where the duty not to act becomes supplemented by the duty to act, is almost impossible of perception. It is no wonder that exceedingly fine distinctions have been developed so that the law is most confused in this field. (See, note, 13 Cal.L.Rev. 72.) Many cases, and particularly the more recent ones, have in fact applied the general doctrine of negligence embodied in section 1714 of the Civil Code rather than the common-law rigid categories test. (For a good discussion of these problems see *Boucher* v. *American Bridge Co.*, 95 Cal.App.2d 659, 667 [213 P.2d 537], et seq.)

"Thus, while there are many cases holding that a land owner is only required to refrain from inflicting wanton or wilful injuries on a trespasser or licensee (see many cases collected 19 Cal.Jur. p. 616, § 52, fn. 13), there are many cases also holding that after 'a trespasser is seen in a position of danger, due care must be exercised to avoid injuring him, and it is negligence not to do so.' (19 Cal.Jur. p. 616, § 52, at p. 617; see cases collected in fn. 17 on p. 618.) This duty of reasonable care not only extends to situations where

the land owner knows of a trespasser's presence, but also to situations where he should know of his presence. Thus, the Restatement of Torts (vol. 2, § 336) declares that if the possessor of land does not know of a trespasser's presence, but 'from facts known to him should know or believe that another is or may be' trespassing, he is 'subject to liability for bodily harm thereafter caused to the trespasser by the possessor's failure to carry on his activities upon the land with reasonable care for the trespasser's safety.' (Many California cases are cited as being in accord in the California annotation to this section.)

"Many courts, in imposing this duty of reasonable care towards trespassers and licensees, have drawn a distinction between active and passive negligence, and have limited the reasonable care test to overt acts of negligence. (See annotation 49 A.L.R. 778.) California has quite clearly adopted this distinction and imposed a duty to exercise reasonable care towards known licensees or trespassers so far as active operations are concerned. In the well-reasoned case of *Oettinger* v. *Stewart*, 24 Cal.2d 133, 138 [148 P.2d 19, 156 A.L.R. 1221], cases to the contrary were expressly overruled. (See also *Herold* v. *P. H. Mathews Paint House*, 39 Cal.App. 489, 493 [179 P. 414]; *Barnett* v. *La Mesa Post No. 282*, 15 Cal. 2d 191, 194 [99 P.2d 650]; *Yamauchi* v. *O'Neill*, 38 Cal.App. 2d 703, 708 [102 P.2d 365]; *Hamakawa* v. *Crescent Wharf etc. Co.*, 4 Cal.2d 499, 503 [50 P.2d 803].) This rule imposing a duty to exercise reasonable care towards known trespassers so far as affirmative acts are concerned, is in accord with the modern trend of authorities." (*Fernandez* v. *Consolidated Fisheries, Inc.*, 98 Cal.App.2d 91, 95 [219 P.2d 73].) The real factor is whether the person is known by the owner to be on the premises and in case of a licensee or even a trespasser, he may have that knowledge. (See *Oettinger* v. *Stewart*, 24 Cal.2d 133 [148 P.2d 19, 156 A.L.R. 1221].) In the case of licensees the landowner knows they are there and when he also knows there is a dangerous condition which they will encounter, it is not unreasonable to impose upon him the duty of taking some measure to protect the licensee from the danger (see 38 Am.Jur., Negligence, § 106) and that is the modern trend. (James, *Tort Liability of Occupiers of Land: Duties Owed to Licensees and Invitees*, 63 Yale L.J. 605.)

It is not necessary in this case to state that a property owner is liable to a gratuitous licensee only for wanton or

wilful conduct with reference to the condition of his property for there are other reasons why plaintiff has not made a case here. This court has not announced such a rule for many years and *Oettinger* v. *Stewart, supra,* 24 Cal.2d 133, casts doubt upon it. This court should reexamine such a rule in line with the discussion in *Fernandez* v. *Consolidated Fisheries, Inc.,* quoted *supra,* 98 Cal.App.2d 91.