[S. F. No. 5356.   Department One.—March 23, 1911.]

ELLA A. SESSIONS et al., Respondents, v. SOUTHERN PACIFIC COMPANY et al., Appellants.

APPEAL FROM JUDGMENT NOT TAKEN IN TIME.—The appellate court has no jurisdiction of an appeal from a judgment taken more than six months after its entry. Such an appeal must be dismissed.

COMMON CARRIERS—LIABILITY AS TO PASSENGER CARRIED FREE.—Under section 2096 of the Civil Code, a carrier of a passenger who does not pay fare for his passage and is carried free, is only required to use ordinary care and diligence for his safe carriage.

ID.—RAILROAD—UNAUTHORIZED FREE PASSAGE—WANT OF AUTHORITY OF CONDUCTOR—TRESPASSER.—If a person obtain free passage on a passenger train from the conductor by means of fraud or misrepresentation, or with knowledge of the want of authority of the conductor to allow such free passage, he does not become a lawful passenger without reward, under section 2096 of the Civil Code, but is a mere trespasser, entitled only to demand that he be not willfully or recklessly injured.

ID.—COLLUSIVE ARRANGEMENT FOR PASSAGE WITH CONDUCTOR—NOTICE OF WANT OF CONDUCTOR'S AUTHORITY.—A person riding on a train without payment of fare, in pursuance and with knowledge of an arrangement made between the conductors thereof, whereby he was given an expired pass running to one of the conductors which he was to present to the conductor in charge of the train, who was to punch and return it as if it were a ticket, is charged with notice, as a reasonable man, that it was contrary to the rules of the railroad company to allow him free passage. The *status* of a person so riding is that of a trespasser and not that of a passenger, and the company is not liable for causing his death unless it has been guilty of willful or wanton injury.

APPEAL from a judgment of the Superior Court of Alameda County and from an order refusing a new trial.    T. W. Harris, Judge.

The facts are stated in the opinion of the court.

Frank McGowan, McGowan, Squires & Westlake, Wm. F. Herrin, and P. F. Dunne, for Appellants.

W. B. Rinehart, and Welles Whitmore, for Respondents.

SHAW, J.—This is an action to recover damages arising from the death of Charles A. Sessions, alleged to have been caused by the negligence of defendants. The plaintiffs are, respectively, the widow and the only child of the decedent. They recovered judgment for five thousand dollars in the court below. In addition to the general verdict the jury made answer to certain questions of fact. The defendants moved the court under section 663 of the Code of Civil Procedure for judgment in their favor upon the answers to these questions.

The court denied the motion.   The defendants' motion for new trial was also denied.   From the judgment and from these orders the defendants appeal.   The verdict and judgment were against the Southern Pacific Company alone.   It would seem therefore that the defendant, Cole, is not aggrieved and has no right of appeal, but, as the objection is not raised we will not consider the question.   The appeal from the judgment was taken more than six months after it was entered.   This court therefore has no jurisdiction thereof and that appeal must be dismissed.

In support of the appeal from the order denying the motion for a new trial, it is contended that the verdict is not sustained by the evidence and that the court erred in giving and refusing instructions and in rulings upon the admission of evidence.   In view of our conclusion as to the sufficiency of the evidence to sustain the general verdict and one of the special findings it will be unnecessary to consider the appeal from the order refusing to enter judgment for the defendants . or the rulings upon instructions and upon the admission of evidence.

The defendant company was operating a railroad running from the Oakland mole in Alameda County, through the city of Fresno to Los Angeles.   At the time of his death, December 20, 1902, Sessions was on board one of the company's passenger trains known as the "Owl," on a trip from Oakland to Fresno.   At Byron station another train operated by the company ran into the rear coach of the "Owl" train and Sessions was killed by the collision.   The complaint alleges that Sessions had paid for his passage and was riding as a passenger on said train.   The principal controversy at the trial and upon this appeal is over the question whether he did sustain that relation to the company or was a trespasser on the train.

In answer to the interrogatories the jury found that Sessions did not purchase a ticket for the trip nor pay any money or other consideration therefor, and that he accepted free passage on the train by invitation of the conductor in charge thereof.   In answer to other interrogatories the jury found that Sessions was not riding on the train by invitation of the conductor, or with the understanding between him and the conductor that he should ride without paying fare, but, as

these findings are inconsistent with the findings first above stated, and are also contrary to the undisputed evidence, they will be disregarded. The evidence, without substantial conflict, showed the following facts. A man named Teeples had been running the "Owl" train as conductor from Oakland as far as Fresno for about two weeks prior to the day of the accident, in place of one Dolan, the regular conductor, who had been sick. On that day, in Oakland, an hour or two before the train left the mole, Teeples arranged with Sessions to carry Sessions on the "Owl" train from Oakland mole to Fresno and back to Oakland without charge and as his guest, it being arranged that Sessions was to take the train at the mole. When Sessions arrived at the mole Teeples had learned that Dolan had resumed work and would take out the "Owl" train on that trip. Teeples then gave Sessions an old and expired trip pass running to Teeples and told Sessions to hand it to the conductor Dolan, when he came to collect tickets on the train, and that Dolan would punch it and hand it back to him. Teeples then saw Dolan and arranged with him to punch the pass as if it were a ticket and allow Sessions to ride on the train free in pursuance of the agreement he, Teeples, had made with Sessions. Under this arrangement Sessions entered the train and began the trip. When Dolan came around to collect the tickets Sessions handed him the pass and Dolan took it, punched it and handed it back to Sessions, as Teeples had directed. Thereafter Sessions continued on the train until the collision occurred. A rule of the company forbade the carrying of passengers without payment of fare.

There is some conflict in the authorities with respect to the degree of care due from a carrier to a passenger who does not pay fare for his passage and is carried free. In this state, however, the question is settled by sections 2096 and 2100 of the Civil Code, which are as follows:

"2096. A carrier of persons without reward must use ordinary care and diligence for their safe carriage."

"2100. A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill."

Both parties devote much space in their brief to a discussion of the questions whether or not the company, under the

circumstances, was bound to use the utmost care and diligence for the safe carriage of Sessions or only ordinary care to that end, and to the question whether or not the conductor of a train is presumed to have authority to carry a passenger free or is presumed not to have such authority. We do not find it necessary to consider at length these propositions. One of the propositions of the appellant is that the company never made any lawful contract to carry Sessions as a passenger or at all, that he rode on the train by means of a fraudulent contrivance with the conductor and that his *status* was that of a trespasser toward whom the company owed no duty except to avoid doing him a willful or wanton injury. There is no evidence sufficient to show that the collision which caused the death of Sessions was due to the willful or wanton negligence or recklessness of the company. This being the case, it follows that if the decedent was, at the time of the collision, a trespasser on the train, the company is not liable in damages for his death. It is well settled by the authorities, and in fact it is not controverted by the plaintiffs, that if a person obtains free passage on a passenger train from the conductor by means of fraud or misrepresentation, or with knowledge of the want of authority of the conductor to allow such free passage, such person does not become a lawful passenger without reward under section 2096 aforesaid, but is a mere trespasser, entitled only to demand that he be not willfully or recklessly injured. (*Condran* v. *Chicago etc. Co.,* 67 Fed. 522, [14 C. C. A. 506, 28 L. R. A. 749] ; *McVeety* v. *St. Paul etc. Co.,* 45 Minn. 268, [22 Am. St. Rep. 728, 47 N. W. 809, 11 L. R. A. 174] ; *Louisville etc. Co.* v. *Thompson,* 107 Ind. 442, [57 Am. Rep. 120, 8 N. E. 18, 9 N. E. 357] ; *Purple* v. *Union etc. Co.,* 114 Fed. 123, [51 C. C. A. 564, 57 L. R. A. 703].) Many other decisions could be cited to the same effect. It is not necessary to extend the list. The jury found specially that Sessions did not accept free passage on that trip with the intent to defraud the defendant company. This finding is clearly contrary to the evidence above related. The arrangement which was made by Teeples and Dolan to allow Sessions to ride on the train without payment of fare was sufficient to inform him, or at least to give him good cause to believe, that the conductor of that train had no authority to carry him without charge. The very terms of the agreement and the

manner in which it was to be carried out, of all of which he was fully aware, were sufficient to cause him, as a reasonable man, to believe that it was contrary to the rules of the company to allow him free passage. The obvious purpose in giving him the expired pass to be handed to the conductor to be punched and returned as if it were a ticket, was to prevent any agent of the company or any person who might inform the company of the fact, from discovering that the conductor was allowing Sessions to ride without presenting a ticket. There is no other reasonable explanation of the device. It was a plan designed and carried out to conceal the evasion of the payment of fare, and the only fair inference from the making of it would be that the conductor was required by the company to exact payment of fare or a ticket from every person riding on the train. The decedent was thereby charged with knowledge of this lack of authority to pass him free. He was in collusion with the conductor to defraud the company of the amount of his fare. Under the authorities cited, his *status* was that of a trespasser and not that of a passenger. The special finding was, therefore, contrary to the evidence and the defendant was not liable in damages for causing his death unless it had been guilty of willful or wanton injury which the evidence does not show. The court should have granted the motion for a new trial.

It is ordered that the appeal from the judgment be dismissed, that the judgment be vacated, and that the order denying a motion for a new trial be reversed.

Sloss, J., and Angellotti, J., concurred.

Hearing in Bank denied.