[Civ. No. 14233.   First Dist., Div. One.   June 13, 1950.]

RAMON FERNANDEZ, Plaintiff and Respondent, v. CONSOLIDATED FISHERIES, INC. (a Corporation), Appellant; CITY AND COUNTY OF SAN FRANCISCO, Intervener and Respondent.

Hadsell, Sweet, Ingalls & Murman for Appellant.

Melvin M. Belli and James Sykes for Plaintiff and Respondent.

Dion R. Holm, City Attorney, and Lawrence S. Mana, Deputy City Attorney, for Intervener and Respondent.

PETERS, P. J.—In an action for personal injuries the jury brought in a verdict for the defendant. Thereafter, the trial court, on motion of plaintiff, granted a new trial on the sole ground that certain instructions "did not fully state the law on trespass." On all other grounds set forth by plaintiff, the motion was denied. Defendant appeals. The city and county of San Francisco, as employer of the plaintiff, was permitted to intervene for the expenses and compensation it had paid to the plaintiff under the compensation law.

The accident occurred at about 11 a. m. on March 26, 1947, at the intersection of Golden Gate Avenue and Steiner Street in San Francisco. Golden Gate Avenue runs east and west, and is a stop street, while Steiner Street runs north and south. The plaintiff was employed as a street sweeper by the city. As such, it was his duty, among other things, to notify any person who dropped articles in the street to pick them up. On the morning in question, while acting in the course and scope of his employment, and while crossing Steiner Street at its intersection with Golden Gate Avenue, and while in the pedestrian lane, plaintiff testified that he noticed defendant's truck (a ton and a half truck with a flat bed and enclosed cab) approaching the intersection and traveling south on Steiner Street; that when he first saw the truck it was about 50 feet from the pedestrian lane in which he was standing; that just as he saw the approaching truck he saw a box lying in the street in back of the truck; that he did not see the box fall from the truck, but surmised that it had fallen from it; that the box he saw was a large box about 4 or 5 feet long; that as the truck came towards him he waved both hands at the

driver and yelled "Your box is falling"; that the truck was only 10 feet from him at the time; that the driver looked right at him and nodded his head; that the truck proceeded ahead until it came to the arterial stop sign where it came to a full stop with its front part within the marked pedestrian cross-walk; that he walked over to the right-hand door of the cab of the truck, opened the door about six or eight inches, and yelled "You lost a box"; that the driver looked right at him, and, with his right hand, motioned him to go away; that while he still had his hand on the door handle the truck driver started up very fast; that he was knocked off balance and gripped the door handle to keep from being thrown down; that he was able to hold onto the door handle for 10 or 15 feet, and during all that time yelled at the driver to stop; that he finally lost his grip and fell under the right rear wheel. He suffered very severe injuries.

The truck driver of defendant testified that he was delivering boxes of fish for his employer at the time of the accident; that the cardboard boxes in which the fish were packed were about eight or nine in number, were about 4 feet long and 2 feet wide, and were lying on the bed of the truck; that the truck bed had no sides, but boxes were kept from slipping·by steel strips in the bed of the truck; that these boxes weighed about 175 to 200 pounds; that as he was driving south on Steiner Street he did not see any box in the roadway; that as he came to the intersection of Steiner and Golden Gate he stopped; that a taxicab was approaching the intersection on Golden Gate from his right; that the taxicab stopped and the driver motioned him to go ahead; that he went through slowly while in low gear; that he heard people yelling, then "The right-hand door of my cab flung open, and almost immediately after the door flung open I run over something"; that he thought the tarpaulin over the fish had caught in the door; that he stopped and saw Fernandez lying in the street. He further testified that as he approached the intersection, and when he stopped there, he did not see Fernandez at all; that the cab door was not opened while he was stopped; that the door was not opened until he was out in the intersection, and occurred almost simultaneously with the bump that indicated he had run over something; that the right window of his cab was closed; that he did not hear Fernandez calling to him and heard no yelling until he had run over Fernandez. He admitted that, after the accident, he saw a carton lying in the street

about where Fernandez said it was, but claimed that it was a small box about a foot wide, long and deep; that the box he saw had not fallen from his truck, and was much smaller than any box he had ever carried on his truck.

The taxicab driver testified as to approaching the intersection and stopping to let the truck through, and stated that just as the truck started up he saw Fernandez grabbing the door handle on the right of the cab of the truck; that, according to his best recollection, the truck driver was looking straight ahead; that he did not hear Fernandez yell; that as the truck started up the door appeared shut, but he was not positive as to this; that Fernandez was running beside the truck, apparently trying to better his grip on the door handle, when he slipped and fell.

In its instructions to the jury the trial judge gave three instructions on the law of trespass, all proposed by the defendant. They were:

"I instruct you that the plaintiff Ramon Fernandez, at the time he took hold of the defendant's truck, if he did so, was a trespasser."

"The only duty a motorist owes to a trespasser on his car is not to injure him wilfully."

"The owner of an automobile owes no duty to a trespasser thereon until he actually knows of the presence of such trespasser."

A little over an hour after the jury had retired it returned to the court and asked for further instructions on three matters, one of which was a request for "another instruction as to the trespassing." The court repeated, almost verbatim, the three instructions above quoted. In less than 15 minutes the jury returned with a verdict for defendant. Thereafter, on motion for a new trial, the motion was granted on the sole ground that the above three instructions did not fully state the law of trespass.

Defendant as appellant, argues that the court abused its discretion in granting the motion for a new trial. In this connection appellant contends that under the first instruction the jury was not to consider it unless it first found that respondent took hold of the truck. It is contended that there is a conflict on this issue, and, because of the general verdict, it must be conclusively presumed that the jury found that respondent did not get hold of the truck. Therefore, so it is contended, instructions 2 and 3 above quoted, even if erroneous, could not have misled the jury. There is no conflict at all

in the evidence on the issue of whether respondent got hold of the door handle. Respondent so testified. The truck driver admitted that the door flew open. The cab driver testified that he "noticed somebody grabbing the door of the truck"; that he saw "a man handling or grabbing the door knob"; that Fernandez "was trying to hold tight to the door so he wouldn't lose his grip"; and that it appeared as if Fernandez "was afraid he'd lose his grip." Whatever ambiguities may exist in his testimony were cleared up on cross-examination, where, in response to the question: "He had a good grip on it but was trying to get a better grip on it?", he replied "That's the picture I got of it." There is, therefore, no conflict at all in the evidence on the issue of whether respondent got hold of the door handle. This being so, under instruction number 1 above, the jury was directed to find that respondent was a trespasser. Even if instruction number 1 were correct (and under the facts the respondent might well have been found to be at least a licensee), we are directly presented with the question as to whether the trial court correctly determined that the giving of instructions 2 and 3 above quoted was prejudicially erroneous. By these two instructions the jury was told that the truck driver owed no duty at all to respondent trespasser unless he knew of the respondent's presence, and that the only duty then owed was "not to injure him wilfully." The question as to whether the truck driver did or did not see respondent, on which there was a direct conflict, did not have to be answered by the jury. Under the instructions given, if the jury found that the truck driver did not act wilfully, it would not have to pass on the issue of whether the truck driver did or did not see respondent. Thus, if the duty to a known trespasser is greater than that defined by the court, the court was fully justified in granting the new trial on the ground that the instructions on the issue were incomplete, incorrect and prejudicial.

The law in reference to the duty owed to trespassers, licensees and invitees has largely developed in reference to the duty of an owner or occupier of real property or structures thereon. The statutes of this state do not provide that a different duty is owed to persons in the three named categories. The only relevant statute is section 1714 of the Civil Code, which provides: "Everyone is responsible, not only for the result of his wilful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his prop-

erty or person, except so far as the latter has, wilfully or by want of ordinary care, brought the injury upon himself.'' In spite of this code section, which has been in our law unchanged since 1872, and which states a civil law and not a common-law principle (Code Napoleon, § 1383; Louisiana Code (1808), § 2215), our courts, in some cases at least, and in apparent disregard of the section, have followed the common-law rule, which purports to make precise and rigid distinctions as to the duty owed by the owner or occupier to invitees, licensees and trespassers. Thus, it has been stated that towards a trespasser the owner or occupier only owes a duty to refrain from wilful or wanton conduct; towards a licensee a similar duty, plus the affirmative duty to warn of unusual dangers, while towards an invitee there is the duty to exercise ordinary care and prudence. (See cases collected 13 Cal.L.Rev. 72, 73, footnotes 5, 6 and 7.) Such an approach requires a court to first determine the precise status of the visitor, which is sometimes a most difficult task, and then to determine from the cases whether the owner has violated any duty owed to a member of such a class. Such an approach is unrealistic, arbitrary, and inelastic. The point where the duties towards members of each of the classes begins or ends, or where it should begin or end, or where the duty not to act becomes supplemented by the duty to act, is almost impossible of perception. It is no wonder that exceedingly fine distinctions have been developed so that the law is most confused in this field. (See, note, 13 Cal.L.Rev. 72.) Many cases, and particularly the more recent ones, have in fact applied the general doctrine of negligence embodied in section 1714 of the Civil Code rather than the common-law rigid categories test. (For a good discussion of these problems see *Boucher* v. *American Bridge Co.*, 95 Cal.App.2d 659, 667 [213 P.2d 537], et seq.)

Thus, while there are many cases holding that a land owner is only required to refrain from inflicting wanton or wilful injuries on a trespasser or licensee (see many cases collected 19 Cal.Jur. p. 616, § 52, fn. 13), there are many cases also holding that after ''a trespasser is seen in a position of danger, due care must be exercised to avoid injuring him, and it is negligence not to do so.'' (19 Cal.Jur. p. 616, § 52, at p. 617; see cases collected in fn. 17 on p. 618.) This duty of reasonable care not only extends to situations where the land owner knows of a trespasser's presence, but also to situations where he should know of his presence. Thus, the Restatement of

Torts (vol. 2, § 336) declares that if the possessor of land does not know of a trespasser's presence, but "from facts known to him should know or believe that another is or may be" trespassing, he is "subject to liability for bodily harm thereafter caused to the trespasser by the possessor's failure to carry on his activities upon the land with reasonable care for the trespasser's safety." (Many California cases are cited as being in accord in the California annotation to this section.)

Many courts, in imposing this duty of reasonable care towards trespassers and licensees, have drawn a distinction between active and passive negligence, and have limited the reasonable care test to overt acts of negligence. (See annotation 49 A.L.R. 778.) California has quite clearly adopted this distinction and imposed a duty to exercise reasonable care towards known licensees or trespassers so far as active operations are concerned. In the well-reasoned case of *Oettinger* v. *Stewart*, 24 Cal.2d 133, 138 [148 P.2d 19, 156 A.L.R. 1221], cases to the contrary were expressly overruled. (See, also, *Herold* v. *P. H. Mathews Paint House*, 39 Cal.App. 489, 493 [179 P. 414]; *Barnett* v. *La Mesa Post No. 282*, 15 Cal.2d 191, 194 [99 P.2d 650]; *Yamauchi* v. *O'Neill*, 38 Cal.App.2d 703, 708 [102 P.2d 365]; *Hamakawa* v. *Crescent Wharf etc. Co.*, 4 Cal.2d 499, 503 [50 P.2d 803].) This rule imposing a duty to exercise reasonable care towards known trespassers so far as affirmative acts are concerned, is in accord with the modern trend of authorities. (See 38 Am.Jur. p. 771, § 109, at p. 773.)

Appellant contends that whatever the law may be as to the duty owed to trespassers on real property, that, as to trespassers on vehicles, the only duty is to refrain from wilful or wanton acts whether the trespasser's presence is known or not. In this connection appellant cites *Albers* v. *Shell Co.*, 104 Cal.App. 733 [286 P. 752], and *Sessions* v. *Southern Pac. Co.*, 159 Cal. 599 [114 P. 982]. These cases undoubtedly held that the only duty owed to trespassers on a truck or train was to abstain from wilful or wanton conduct, even if the presence of the trespasser was known, and even if positive acts were involved. These cases are of the same type and vintage as those cases cited in *Oettinger* v. *Stewart*, 24 Cal.2d 133, at p. 138 [148 P.2d 19, 156 A.L.R. 1221], and expressly overruled. Insofar as they hold that the only duty owed to a known trespasser is

to refrain from wilful or wanton acts, they must be deemed to have been overruled.

Appellant nevertheless contends that, whatever the law may be as to land owners, it is logically absurd to apply the reasonable care test to trespassers on automobiles because of the so-called guest law embodied in section 403 of the Vehicle Code. Under that statute the operator of a vehicle is only liable to a guest where the injury results from intoxication or wilful misconduct of the driver. Appellant contends that if a truck driver has a guest riding with him, and a trespasser jumps on the truck and his presence is known to the driver, and if the driver is guilty of ordinary negligence resulting in injuries to the guest and to the trespasser, that if the reasonable care test be applied to the known trespasser, the trespasser can recover while the guest could not. Therefore, says appellant, the only fair test to apply to trespassers on motor vehicles, known to the driver, is the wilful or wanton test. The example is, of course, different from the factual situation here present. It is conceivable that when such a problem is presented to the courts that it might be held that a known trespasser riding on a truck is there by implied invitation and is therefore a guest within the meaning of section 403 of the Vehicle Code. But even if the logically absurd result envisaged by appellant were to be reached in such a case, it would be no more absurd than many other factually absurd situations created by the guest law. Thus, if a guest is riding in a car, and a stranger to the driver is crossing the street, and the driver is guilty of negligence, and such negligence results in injury to the guest and to the stranger, the stranger can recover but the guest, to whom a high moral duty is owed, cannot recover. If the wilful or wanton test were applied to the present case it would mean that if Fernandez was a trespasser, he could not recover unless the jury found that the truck driver was guilty of wilful or wanton conduct simply because Fernandez touched the door handle, but had he not touched it he could recover if the truck driver was guilty of ordinary negligence. Such a result would be more absurd, logically, than the result given in example presented by appellant. The complete answer to this contention of appellant is that the guest law is statutory. For reasons known to it the Legislature determined to limit liability of host drivers to guests. Section 403 of the Vehicle Code is limited to guests. ■ Sec-

tion 1714 of the Civil Code is of equal importance, and there the Legislature has seen fit to adopt the rule of ordinary care. That section applies except where section 403 of the Vehicle Code has changed the law.

In the instant case we are not concerned with passive negligence at all. If there was any negligence it was active negligence. Whether Fernandez was a licensee, invitee or trespasser, it should have been left to the jury to determine whether appellant knew or should have known of his presence. The jury should also have been instructed that if they found appellant knew or should have known of Fernandez's presence, then appellant was under a duty to exercise that degree of care a reasonably prudent man would have exercised under the circumstances. To instruct the jury that Fernandez was a trespasser towards whom the only duty was to refrain from wilful acts was clearly erroneous and palpably prejudicial.

The order granting the new trial is affirmed.

Bray, J., and Schottky, J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 10, 1950. Edmonds, J., and Schauer, J., voted for a hearing.