[L. A. No. 10918. In Bank.—August 14, 1931.]

JOE HERNANDEZ, Respondent, v. SOUTHERN CALIFORNIA GAS COMPANY (a Corporation), Appellant.

Thos. J. Reynolds for Appellant.

George L. Greer for Respondent.

THE COURT.—Upon a re-examination of the record on this appeal after decision by the District Court of Appeal, First District, Division Two, we are satisfied with the statement of the facts, reasoning and conclusions of that court and hereby adopt the opinion there rendered, prepared by Mr. Justice Sturtevant, as the opinion of this court. It is as follows:

"Action for personal injuries. The verdict was in favor of the plaintiff and from the judgment entered thereon the defendant has appealed. For some months prior to the happening of the accident the Los Angeles County Sanitation District had been engaged in laying a sewer along the west side of Atlantic boulevard in the city of Los Angeles. In the immediate neighborhood of where the work was being done the ground is marshy. The water level is within six or seven feet of the surface of the ground. The sewer trench was dug and at the same time the water was pumped out and the pipe was so laid that the bottom of it was about ten feet below the surface of the ground. The pipe was about three feet in diameter and was made in joints of reinforced concrete. North of Tweedy boulevard the sewer had been laid. Manholes had been installed and some of them had been covered, but the joints of the pipe had not been caulked. The dirt and rock had been thrown back into the trench and the ground had been leveled up. The evidence does not show that any apertures, channels, or pipes of any kind led to, or into, the sewer from any direction except as they may have been created by or arisen out of the conditions we have noted. On the afternoon of the 22d day of February, 1927, the plaintiff took a coal oil lantern, tools, and materials, and entered the sewer to caulk the joints. He had worked about two hours and was inside of the sewer at a point approximately one hundred and fifty feet from the manhole he entered when an explosion occurred and he was seriously burned. He commenced this action to recover damages for his injuries. In

his complaint he alleged that the defendant maintained gas pipes in Atlantic boulevard near the intersection of the two streets named above; that the pipes were negligently and carelessly maintained and that gas escaped therefrom in large quantities and exploded and injured him. In its answer the defendant denied specifically the allegations of the complaint. In presenting his case the plaintiff introduced evidence showing that he entered the sewer as above stated; that an explosion occurred; that he was injured; and the nature and extent of the injuries. He also introduced evidence to the effect that one or two days after the explosion the defendant sent its employees into the neighborhood of the explosion and there made excavations and examination and alterations. Some of the witnesses saw certain leaks. No one of those leaks was described as being closer than one hundred feet from where the plaintiff was at the time of the explosion. After the explosion had occurred no gas pipe was shown to be so broken as to allow gas to escape in large quantities. When the explosion occurred some of the witnesses stated that the flame was blue. At least one of the witnesses testified that the explosion was of such force as to shake the buildings and windows. The defendant's gas pipes contain natural gas and extend along the east side of Atlantic boulevard, and, from the main pipes, service pipes are laid at right angles to the west over the sewer, or to the east to the properties of the defendant's customers. The pipes were so laid that they were from two to three feet under the surface of the ground. At the end of the plaintiff's case the defendant moved for a nonsuit. The court denied the motion and thereupon the defendant proceeded to introduce its case. It called to the stand the employees who did the work and the employees who directed the work of making the above mentioned excavation, alterations, and examinations of the gas pipes. Each one of those witnesses was examined and cross-examined as to what leaks, if any, were located. One leak, located about one hundred feet from where the plaintiff was working, was on the east side of the defendant's pipes and in a service pipe serving one of the customers residing on the east side of Atlantic boulevard. The witness testified that when he located it and applied the soapsuds test there were small bubbles, and the extent of the leak would

be one or two cubic feet in ten or twelve hours. It was twenty feet east of the sewer and one hundred feet south of the manhole. One witness testified that there were two other small leaks at a distance of a few hundred feet from the place where the explosion occurred. The defendant's witnesses testified that, applying their pressure tests, they found no major leaks in any of the pipes at any place. They further testified that gas will not sink through water at all; that it is only about seven-tenths as heavy as air; and that it will rise from, but not sink into, trenches or pits. Neither party introduced any evidence showing that defendant's escaping gas flowed to, or into, the sewer.

"At all times the defendant claimed that there was no evidence that the gas which exploded was defendant's gas. It also claimed that the explosion was caused by the explosion of the plaintiff's coal oil lantern. It also contended that the explosion might have occurred from gasoline which those who were constructing the sewer had spilled from time to time. Furthermore, they claimed that the explosion might have been marsh gas instead of the defendant's gas. It cites and relies on *Union Inv. Co.* v. *San Francisco Gas etc. Co.*, 168 Cal. 58 [141 Pac. 807]. In reply, the plaintiff quotes evidence showing the explosion lifted the lids on the manholes. He argues that the explosion could not have been merely the explosion of a single lantern. He then contends that the surface soil of the street may have been packed and hardened and that the defendant's gas leaked out of the pipes, approached the surface of the street, and was forced to pass under the surface of the street and across to, down to, and into the sewer. The answer is not sufficient. ▪ The plaintiff was bound to introduce some evidence, direct or indirect, showing not only that defendant's gas was allowed to escape but also that it entered and accumulated in the sewer pipe. Of course, it is not contended that there is any direct evidence in the record that defendant's gas was in the sewer. Furthermore, an inference to that effect must be founded on a fact legally proved and on such a deduction from that fact as is warranted by a consideration of the course of nature. (Code Civ. Proc., sec. 1960.) But the direct positive proof in this record is that from 'a consideration of the course of nature' natural gas will rise and not sink and that it will not pass down into

water. The plaintiff also makes the contention that the doctrine of *res ipsa loquitur* applied and he cites *Smith* v. *Southern Counties Gas Co.*, 89 Cal. App. 81 [264 Pac. 532]. But in that case the injured person at the time of the injury was standing in a pit in which the gas company had its pipes located. Both the plaintiff and the defendant in the case at bar concede that *Judson* v. *Giant Powder Co.*, 107 Cal. 549 [48 Am. St. Rep. 146, 29 L. R. A. 718, 40 Pac. 1020, 1021], states the rule correctly when the court quotes from Shearman and Redfield on Negligence as follows: '*When a thing which causes injury* is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care.' The italicized words present the very question before us, to-wit, what caused the injury, defendant's gas or some other explosive? ▮ Not until it is shown that the defendant's gas caused the injury can the doctrine of *res ipsa loquitur* be relied on. (19 Cal. Jur. 708, sec. 125.) Assuming that the defendant was negligent in having some leaks in its pipes, no evidence was introduced showing that any of those leaks led to the sewer, and the uncontradicted evidence is that the escaping gas would rise and not fall, and that it could not fall below the water level down into the sewer, which was lower than the top of the water. It thus appears that there was no evidence showing that '*the thing which caused the injury*' was under the management of the defendant or that it belonged to the defendant or that the defendant was in any way responsible for injuries caused by it.

"The defendant claims that it was not negligent. Hereinabove we have shown to what extent there were any leaks. Evidence was introduced by the defendant showing that it had a large corps of inspectors and repairers who diligently examined. All of these facts were for the consideration of the jury. They were properly submitted and this court may not say as a matter of law that no negligence was shown. However, it is clear that the defendant's negligence was not shown to have been the cause of the injury.

389

"In view of what we have said above we need not discuss other points made by the defendant."

Judgment reversed.