[L. A. No. 21530.   In Bank.   Jan. 30, 1951.]

BERTRAND RABER, Appellant, v. SAUL TUMIN et al.,
Respondents.

Linnell & Smith and Charles T. Smith for Appellant.

Spray, Gould, Duckett & Bowers and Malcolm Archbald for Respondents.

SCHAUER, J.—Plaintiff seeks to recover damages for personal injuries. Named as defendants are Saul Tumin, who was the lessee of a store in which the injuries were received, and Tumin's employe Endriss, a carpenter. At the close of plaintiff's case the court granted the defendants' motions for nonsuit, and plaintiff appeals. We conclude that as to both defendants the matter should have gone to the jury.

The granting of a motion for nonsuit is warranted ". . . when, and only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff." (*Card* v. *Boms* (1930), 210 Cal. 200, 202 [291 P. 190]; see, also, *Golceff* v. *Sugarman* (1950), *ante*, pp. 152, 153 [222 P.2d 665]; *Blumberg* v. *M. & T. Incorporated* (1949), 34 Cal.2d 226, 229 [209 P.2d 1], and cases there cited.) "Unless it can be said as a matter of law, that . . . no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury." (*Estate of Lances* (1932), 216 Cal. 397, 400 [14 P.2d 768].)

In other words, while in most appeals it is the duty of the reviewing court to indulge every reasonable intendment in favor of sustaining the trial court, substantially the reverse is true when the appeal is from an order of nonsuit. In the latter case the appellate court must view the evidence as though judgment had gone in favor of the appellant, and order a reversal if such a judgment can be sustained.

Stated in the light most favorable to plaintiff, the evidence may be summarized as follows:

Plaintiff, an electrical contractor, aged 36, at defendant Tumin's request went at about 1:30 o'clock in the afternoon to a store in the City of Long Beach, which Tumin occupied as lessee, in order to check for any changes that might be necessary in the wiring. Inside the store plaintiff noticed

defendant Endriss, an employe of Tumin, hammering on a partition which divided the front, or "show room," of the store from the rear part thereof. The showroom was between 16 and 17 feet wide with the front door approximately in the middle on the north side, and about 16½ feet deep from the front, or north, wall, to the partition. After plaintiff and Tumin had talked together for about 10 minutes someone from outside called to Tumin and he left the store; plaintiff, who was standing "not very far from the center" of the showroom, turned to leave the store and "believes" that as he approached the front door he saw a ladder standing "almost vertically" upright against the front (north) wall at a point near the east wall; he was "very close to the front entrance when I got knocked out"; he does not "remember falling down"; he regained consciousness in the hospital. While in the store plaintiff saw no "holes in the floor" or debris or "obstructions of any kind" in his pathway; the floor "was not so slippery" that he "had difficulty holding" his feet on the floor; neither he, Tumin nor Endriss used the ladder while plaintiff was in the store; no one except plaintiff, Tumin, and Endriss was in the store; and during this period Endriss was standing on the floor while working.

Defendant Endriss testified that he had begun working in the store for Tumin on the Friday prior to the Monday on which plaintiff was injured; that in addition to demolishing the partition on which he was hammering, his work for Tumin was to include the setting of showcases and wall fixtures that Tumin "had coming from another store"; that his hammering on the partition, which was 8 feet tall, caused it to "vibrate or to jump . . . some"; the floor, of composition tile, was slippery, heavily waxed, and he slid and slipped several times and fell down on it; when he entered the store the ladder, which was a ship's ladder 8 feet long, with sides made of one by sixes and treads "possibly" of one by eights, had been lying horizontally on its edge leaning up against the west wall of the store; he did not "remember" using, or observing anyone else use, the ladder; he heard, but did not see, plaintiff fall and discovered him lying near the east store wall with the ladder lying flat across his hips; plaintiff's head was approximately 6 feet west of the east wall and one foot south of the north, or front, wall, and his feet were near the east wall; at the time of the accident the light was very good and no one else was in the store. Endriss further testified as follows: "Q. In this accident, when you were

working for Mr. Tumin, you helped him move some show-cases around, didn't you . . . A. Yes, that is true. Q. It wasn't simply carpenter work, it was some general handy man work, in addition to carpentering, although that was the principal detail? A. That is the line of our work naturally . . . Q. Do you know whether or not on the day that Mr. Raber was injured, that there was any object of any kind or objects which were standing at any point in the easterly half of the front store room or show room? A. Not that I recall.''

The facts as to how and when and by whom the ladder was brought into the store, and as to by whom it was raised from a horizontal to a substantially vertical position, and who had charge of it, are not specifically shown, but we think the evidence hereinabove epitomized, considered with that here-inafter discussed, is sufficient to support a finding that defendants had possession of the store and of the ladder and that they were exercising dominion over such property.

According to defendant Tumin he had just signed the lease and taken possesssion of the store between 9 and 10 o'clock in the morning of the day the accident occurred, and at that time saw the ladder lying on the floor along the west wall of the store.

The doctor who examined plaintiff at the emergency hospital following the accident testified that plaintiff had suffered a fractured skull and that ''I don't believe it would be speculation to say that this man lying there unconscious with abrasions on his head, and bleeding from his ear, that there had been a blow to the head.'' Plaintiff's wife testified that during the 14 years of their marriage plaintiff ''has been very healthy. He has never been sick.''

█ Plaintiff was a business visitor toward whom Tumin, together with the servant through whom he was acting in altering the premises, ''was obliged to exercise ordinary care to keep the premises in a reasonably safe condition, or to warn . . . of danger. The duty was not limited to conditions actually known . . . to be dangerous, but extended also to conditions which might have been found dangerous by the exercise of reasonable care. [Citations.]'' (*Blumberg* v. *M. & T. Incorporated* (1949), *supra,* 34 Cal.2d 226, 229.)

Plaintiff urges that the evidence justifies application of the res ipsa loquitur doctrine, and that the nonsuit was therefore improperly granted (see *Hinds* v. *Wheadon* (1942), 19 Cal.2d 458, 461 [121 P.2d 724]; *Ybarra* v. *Spangard* (1944),

25 Cal.2d 486 [154 P.2d 687, 162 A.L.R. 1258]). Defendants' position is that any judgment against them would be untenable because based upon nothing more substantial than speculation and guessing (see *Reese* v. *Smith* (1937), 9 Cal.2d 324, 328 [70 P.2d 933]).

■ As declared in *Ybarra* v. *Spangard* (1944), *supra*, page 489, ''The doctrine of res ipsa loquitur has three conditions: '(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.' (Prosser, Torts, p. 295.)'' A more detailed explanation of the applications, limitations and effects of the doctrine may be found in *Dierman* v. *Providence Hospital* (1947), 31 Cal.2d 290, 295 [188 P.2d 12]. It has also been more specifically pointed out that ''the applicability of the doctrine of res ipsa loquitur depends on whether it can be said, in the light of common experience, that the accident was more likely than not the result of their [defendants'] negligence. [Citations.] 'Where no such balance of probabilities in favor of negligence can be found, res ipsa loquitur does not apply.' (Prosser on Torts [1941], p. 297.)'' (*La-Porte* v. *Houston* (1948), 33 Cal.2d 167, 169 [199 P.2d 665].)

We are satisfied that a permissible view of the evidence here meets the several elements of the doctrine of res ipsa loquitur as above depicted. ■ Certainly the accident appears to satisfy the first requirement: an invitee in a showroom is not ordinarily, in the absence of someone's negligence, struck on the head by a falling ship's ladder; secondly, the evidence tends to show that the instrumentality—the ladder on the slippery floor in the showroom—was within the exclusive control of defendants.

■ Although defendant Tumin testified that he had entered into possession of the premises only about four hours prior to the accident, Endriss stated that he himself had commenced ''working on the job'' of ''demolishing'' the partition for Tumin some three days earlier. It may thus be inferred that the defendants were not only in control of the store and of the ladder, but had had control for a sufficient period of time to have discovered, by the exercise of reasonable care, the fact that the floor was slippery and that the ladder was standing ''almost vertically'' up against the store wall, if, indeed, the floor had not been polished, and the ladder had

not been placed in its almost vertical position, by either or both of the defendants during their work about the premises.

■ The fact that plaintiff is by the very circumstances under which he was injured unable to specifically identify, as between master and servant, the actively negligent person does not deprive him of the aid of the doctrine of res ipsa loquitur. (See *Ybarra* v. *Spangard* (1944), *supra*, 25 Cal.2d 486, 490; *Cavero* v. *Franklin etc. Benevolent Soc.* (1950), *ante*, pp. 301, 311 [223 P.2d 471].)

From plaintiff's testimony that he does not remember falling and that as he proceeded from near the center of the showroom to a point near the front door (which was approximately midway between the east and west walls) he "got knocked out," considered with the further fact that plaintiff was found on the floor with the ladder lying across his body and suffering from injuries including a fractured skull which resulted from a blow to the head, together also with the other pertinent circumstances in evidence, it may be inferred that the ladder (which had been standing near the east wall) fell and caused plaintiff's fall, rather than that plaintiff fell and caused the ladder to topple. In view of the slippery floor, the substantial weight of a man's body, the apparently substantial weight of the ladder, and its position across plaintiff's body, it cannot be said that plaintiff's position when found precludes the inferences above suggested.

■ As to the third element of res ipsa loquitur, above enumerated, the test is met in that the evidence tends to show that plaintiff had no contact with the ladder until it fell upon him as he was leaving the store.

■ Under the circumstances related it appears that the "balance of probabilities" test has been met. It is a matter of common knowledge that a ladder, and particularly one of the size and apparent weight of that involved here, cannot be made to stand upright against a wall, on a heavily waxed composition tile floor, without some fastening or other special attachment, unless the bottom or foot of the ladder is at a point almost touching the wall itself, so that the ladder is actually "almost vertically" upright (as plaintiff's testimony suggests) and thus in an inherently dangerous position from which it quite likely will topple forward from the top at a small jar or vibration. Here it would seem that the owner of the ladder and premises, and the employe working therein, should have foreseen that vibration or a jar might be caused by traffic on the street outside the store, by the hammering

of Endriss on the partition, or even by the tread of persons walking about the store, and that placing or leaving the ladder substantially upright on the slippery floor would be dangerous to persons lawfully upon the premises. Certainly it seems to us that the balance of probabilities here suggests negligence on the part of the person or persons responsible for the ladder and the slippery floor, rather than that the accident was unavoidable or due to negligence of the plaintiff. Defendants, not plaintiff, were in control of the premises.

Defendants argue that the fact that the ladder was found across plaintiff's body at an oblique rather than a right angle to the wall against which it had been leaning establishes that it "must have toppled over sideways" rather than forward, and that "it is common human experience that a ladder . . . will not fall over sideways unless some outside agency supplies the moving force." However, the force of the contact between the falling ladder and plaintiff's head or other part of his body would in common experience cause deflection from the initial direction of fall, and hence defendants' argument, however plausible, is not as a matter of law compelling, and, therefore, cannot sustain the nonsuit.

The fact that testimony tended to show that plaintiff was near the door in the middle of the front wall and that the ladder was upright near the east wall, but leaning against the front wall, likewise cannot support the nonsuit. Obviously the relative positions of the plaintiff and of the ladder were to some extent approximations, and inconsistencies in permissible inferences from the evidence present issues of fact which must be resolved by findings and a judgment rather than by an order of nonsuit.

The judgment is reversed and the cause remanded for a new trial.

Gibson, C. J., Shenk, J., Carter, J., and Spence, J., concurred.

TRAYNOR, J., Dissenting and Concurring.—I concur in the judgment insofar as it reverses the nonsuit in favor of defendant Tumin. The evidence is sufficient to warrant an inference that while plaintiff was walking across defendant Tumin's showroom on his way to the front door, a ladder fell away from the wall top end first, struck him on the head, and knocked him to the floor. Since a ladder would not ordinarily fall had it not been negligently placed or

left in an unstable position, and since plaintiff himself did nothing to set it in motion, the doctrine of res ipsa loquitur may properly be invoked to justify an inference of actionable negligence against the person who had control of the ladder and the premises where it was located. Defendant Tumin had such control. He was the lessee of the premises and was the only person apart from his employee, for whose conduct he was also legally responsible, who might either have placed the ladder in a dangerous position or failed to remove it from such a position after taking possession of the premises.

I cannot agree, however, that the doctrine of res ipsa loquitur should be invoked against defendant Endriss merely because he was one of the persons who could have placed or left the ladder in a dangerous position. The doctrine is based on probabilities. Defendant's control and the nature of the injury must be such that reasonable men can conclude that it is more probable than not that the cause of the injury was negligent conduct on the part of defendant. (*LaPorte* v. *Houston,* 33 Cal.2d 167, 169 [199 P.2d 665] ; *Honea* v. *City Dairy, Inc.,* 22 Cal.2d 614, 616-617 [140 P.2d 369] ; see Prosser, Torts, p. 297.) If there is equal probability that the injury could have been caused by the negligence of any one of two or more persons, it is impossible to conclude that it was more probably caused by one than another, and the doctrine is inapplicable. (*Hernandez* v. *Southern California Gas Co.,* 213 Cal. 384, 388 [2 P.2d 360] ; *Olson* v. *Whitthorne & Swan,* 203 Cal. 206, 208 [263 P. 518, 58 A.L.R. 129] ; *Zentz* v. *Coca Cola Bottling Co.,* 92 Cal.App.2d 130, 133-134 [206 P.2d 653] ; see Prosser, *Res Ipsa Loquitur in California,* 37 Cal.L.Rev. 183, 196-198, and cases there cited.)

Although the record is devoid of evidence from which it can be determined which of the defendants was at fault, the majority opinion holds that the "fact that plaintiff is by the very circumstances under which he was injured unable to specifically identify, as between master and servant, the actively negligent person does not deprive him of the aid of the doctrine of res ipsa loquitur." Under the rule so enunciated it is no longer necessary for a plaintiff to prove that it is more probable than not that he was injured as a result of defendant's negligence; he need only prove that he suffered an injury of a kind that does not ordinarily occur in the absence of someone's negligence and that defendant was one of various persons who could have been negligent. Although such a rule is supported by *Ybarra* v. *Spangard,* 25 Cal.2d

486 [154 P.2d 687, 162 A.L.R. 1258], and *Cavero* v. *Franklin etc. Benevolent Soc.*, *ante*, p. 301 [223 P.2d 471], it is at war with the general principle that plaintiff must prove that defendant was negligent and that his negligence was the cause of the injury. Under the rule of the Ybarra case as here applied a plaintiff who has suffered an injury of a kind that ordinarily does not occur in the absence of someone's negligence may establish a cause of action against all persons who had an opportunity to cause the injury. A plaintiff, for instance, who is struck on the head by a flowerpot falling from a multistoried apartment building may recover judgment against all the tenants unless the innocent tenants are able to identify the guilty one. (See *Ybarra* v. *Spangard*, 93 Cal.App.2d 43, 47-48 [208 P.2d 445].)

Until the present decision, the rule of the Ybarra case has been confined to the factual situation there presented. In that case an unconscious patient suffered an unusual injury during the course of an operation, and the court held that he could invoke the doctrine of res ipsa loquitur against all persons who took part in his treatment while he was unconscious. It was careful to point out, however, that it was not undertaking "to state the extent to which the reasoning of this case may be applied to other situations in which the doctrine of res ipsa loquitur is invoked." (*Ybarra* v. *Spangard*, 25 Cal.2d 486, 494 [154 P.2d 687, 162 A.L.R. 1258].) In the exploding bottle cases, that reasoning has not been applied, and it has uniformly been held that before he may have the benefit of res ipsa loquitur, the plaintiff must prove that the bottle was carefully handled after it left the control of the bottler. (*Gordon* v. *Aztec Brewing Co.*, 33 Cal.2d 514, 517-518 [203 P.2d 522]; *Zentz* v. *Coca Cola Bottling Co.*, 92 Cal.App.2d 130, 133-134 [206 P.2d 653]; *McClelland* v. *Acme Brewing Co.*, 92 Cal.App.2d 698, 699-700 [207 P.2d 591].) Under the reasoning of the majority opinion, plaintiff could invoke the doctrine of res ipsa loquitur against the bottler and any intermediaries without proving anything more than that he himself handled the bottle carefully.

The doctrine of res ipsa loquitur concerns a type of circumstantial evidence upon which plaintiff may rely to discharge his burden of proving that his injury was more probably than not the result of negligent conduct on the part of defendant. When, as in the Ybarra case, however, the court permits recovery against defendants who plaintiff has not proved more probably than not caused his injury, ostensibly

by extending the doctrine of res ipsa loquitur, it is actually setting up a new rule of law affecting the burden of proof.

There are situations where, either by the application of a presumption or by shifting the burden of proof itself, it is reasonable to require of defendant an explanation if he is to escape a judgment against him. Thus, when bailed goods are lost or destroyed, it is reasonable to require the bailee to prove that the loss was not owing to his negligence. (*George v. Bekins Van & Storage Co.*, 33 Cal.2d 834, 839-841 [205 P.2d 1037].) Again, when a carrier has undertaken to carry a passenger safely it is reasonable to enforce that duty by requiring the carrier to explain an accident. (See Prosser, *Res Ipsa Loquitur in California*, 37 Cal.L.Rev. 183, 185.) The relationship between an unconscious patient and those who have undertaken to treat him may also be one that justifies placing the burden of proof on the attendants if they are to escape liability for an unusual injury inflicted while the patient is unconscious. Only confusion can result, however, if rules designed to shift the burden of proof or the burden of going forward with the evidence are treated as rules governing the sufficiency of circumstantial evidence.

. In *Summers* v. *Tice*, 33 Cal.2d 80 [199 P.2d 1, 5 A.L.R.2d 91], the court avoided this confusion by a forthright recognition that when one of two negligent defendants .injures the plaintiff and it is impossible for the plaintiff to prove which one, it is reasonable to put the burden on each defendant of proving that it was not his negligence that caused the plaintiff's injury. In the present case, however, there is no evidence that both defendants were negligent. It is hardly reasonable to place on defendant Endriss the burden of proving that his negligence did not cause plaintiff's injury when his negligence has not been established. Moreover, there is nothing in the relationship between plaintiff and defendant Endriss that justifies shifting the burden of proof from one to the other. Both were on the premises for the purpose of assisting defendant Tumin to prepare for the opening of business. Neither had a duty to make the premises safe and neither had had anything to do with the ladder. They were substantially in the same position. If defendant Endriss must explain the injury that befell plaintiff, plaintiff would be under the same burden had the ladder fallen on Endriss. In other words, any plaintiff who suffers an injury of a kind that would not ordinarily occur in the absence of someone's negligence may recover judgment from any person who had an opportunity

to cause the injury, even if he bears no special relationship to plaintiff that justifies placing the burden of proof on him.

The injustice of making an innocent person, who has not undertaken any special duty toward plaintiff, bear the burden of the latter's loss may be obscured in this case because there are only two defendants, one of whom was more probably negligent than not. The rule now stated in reliance upon the Ybarra case is not limited to such situations. In the Ybarra case there were six defendants and judgment was secured against all of them because none could account for the injury. (*Ybarra* v. *Spangard,* 93 Cal.App.2d 43 [208 P.2d 445].) A resourceful plaintiff could ordinarily find more than two defendants. There might be more than one employee; a plumber, a carpenter, a glazier, a painter, or an electrician might have been upon the premises and had an opportunity to place a ladder negligently; or a former tenant might have negligently left the premises in an unsafe condition. The plaintiff could sue all such persons, and once he had established that he suffered an injury that would not ordinarily occur in the absence of someone's negligence, the fact that he was "by the very circumstances under which he was injured unable to specifically identify . . . the actively negligent person [would] not deprive him of the aid of the doctrine of res ipsa loquitur."

Edmonds, J., concurred.