[S. F. No. 18456. In Bank. Aug. 6, 1952.]

MARY E. ZENTZ, Respondent, v. COCA COLA BOTTLING COMPANY OF FRESNO (a Corporation), Appellant.

438

Ray W. Hays and James N. Hays for Appellant.

L. Kenneth Say for Respondent.

GIBSON, C. J.—Plaintiff was injured by the explosion of a bottle of Coca Cola which had been bottled and delivered to her restaurant by defendant. She brought this action for damages, and defendant appeals from a judgment upon a jury verdict in her favor.

Soft drinks were kept in the restaurant in a cooler which stood about waist high and opened from the top. The cooler was empty on the day of the accident when the driver of

defendant's truck delivered a number of cases of Coca Cola. He placed the bottles in the cooler four at a time until it was filled, and while he was doing this one bottle broke when he struck it against another. No one else handled the bottles from the time they were loaded onto the truck until they were placed in the cooler.

About an hour after the delivery plaintiff reached into the cooler, and, before she touched any of the bottles, one exploded. Three customers testified that they heard a "pop," that plaintiff screamed, and that they saw her clutching her right arm, which had been severely cut.

Defendant's plant manager testified that, prior to the accident, the only tests defendant made to discover defective bottles were visual inspections which took place as the bottles were moved along a conveyor belt at a speed in excess of 150 a minute while they were being washed and filled. He also testified that bottles were sometimes mishandled by defendant's employees and that as a result bottles occasionally broke.

The principal question in this case is whether it was proper to give an instruction to the jury that from the happening of the accident, as established by the evidence, there arose an inference that the proximate cause of the occurrence was some negligent conduct on the part of defendant. This, of course, depends upon whether, under the facts of this case, plaintiff was entitled to the benefit of the doctrine of res ipsa loquitur.

An increasing number of the cases coming to this court involve res ipsa loquitur, and this may be due not only to the fact that the doctrine is often difficult to apply but also to confusion which has arisen because the opinions have not always used the same language in stating the rule. ▮ Res ipsa loquitur, when translated, "means simply 'the thing, or affair, speaks for itself,' and, so speaking, authorizes the inference of negligence in the absence of a showing to the contrary." (*O'Connor* v. *Mennie*, 169 Cal. 217, 223 [146 P. 674]; see, also, *Ales* v. *Ryan*, 8 Cal.2d 82, 98 [64 P.2d 409]; *Michener* v. *Hutton*, 203 Cal. 604, 607 [265 P. 238, 59 A.L.R. 480].) There is, of course, no magic in the Latin phrase, and its use as a convenient label for the doctrine may have resulted in some of the confusion which is found in the statements of the principles upon which the rule is based.

The statement of the doctrine which, with some variation, was used in many of the earlier California decisions appears

in *Michener* v. *Hutton,* 203 Cal. 604, 607 [265 P. 238, 59 A.L.R. 480], where it was said: "The courts of this state have long since adopted the rule as expressed in 1· Shearman & Redfield on Negligence, sixth edition, page 132, viz.: 'Where the thing is shown to be under the management of the defendant' or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of proper care.' [Citations.]"* (See, also, *Dixon* v. *Pluns* (1893), 98 Cal. 384, 389 [33 P. 268, 35 Am.St.Rep. 180, 20 L.R.A. 698]; *Judson* v. *Giant Powder Co.,* 107 Cal. 549, 556 [40 P. 1020, 48 Am.St.Rep. 146, 29 L.R.A. 718]; *McCurrie* v. *Southern Pac. Co.,* 122 Cal. 558, 561-562 [55 P. 324]; *Chico Bridge Co.* v. *Sacramento Tr. Co.,* 123 Cal. 178 [55 P. 780]; *Harrison* v. *Sutter Street Ry. Co.,* 134 Cal. 549, 550 [66 P. 787, 55 L.R.A. 608]; *Rowe* v. *Such,* 134 Cal. 573, 574-575 [66 P. 862, 67 P. 760]; *Kahn* v. *Triest-Rosenberg Cap Co.,* 139 Cal. 340, 344 [73 P. 164]; *Cody* v. *Market St. Ry. Co.,* 148 Cal. 90, 94 [82 P. 666]; *Valente* v. *Sierra Ry. Co.,* 151 Cal. 534, 538 [91 P. 481]; *Housel* v. *Pacific Elec. Ry. Co.,* 167 Cal. 245, 247 [139 P. 73, Ann.Cas. 1915C 665, 51 L.R.A.N.S. 1105]; *O'Connor* v *Mennie,* 169 Cal. 217, 223 [146 P. 674]; *Hernandez* v. *Southern Calif. Gas Co.,* 213 Cal. 384, 388 [2 P.2d 360]; *Godfrey* v. *Brown,* 220 Cal. 57, 64 [29 P.2d 165, 93 A.L.R. 1072]; *Ales* v. *Ryan,* 8 Cal.2d 82, 95 [64 P.2d 409].) Other cases have used different language in setting forth the rule and have referred to "control" rather than "management" and to what "ordinarily would not have occurred" instead of to what "in the ordinary course of things does not happen." (*Olson* v. *Whitthorne & Swan,* 203 Cal. 206, 208 [263 P. 518, 58 A.L.R. 129]; see, also, *Escola* v. *Coca Cola Bottling Co.,* 24 Cal.2d 453, 457-458 [150 P.2d 436]; *cf. Hinds* v. *Wheadon,* 19 Cal.2d 458-461 [121 P.2d 724].)

It was stated in *Judson* v. *Giant Powder Co.,* 107 Cal. 549,

---

*The language used by Shearman & Redfield was quoted from the opinion of Chief Justice Erle in *Scott* v. *London & St. Katherine Docks Co.* [1865] 3 H. & C. 596, 601, 159 Eng.Rep. 665, 667. Even before the Scott case this court declared that in view of the high degree of care owed by a common carrier, the occurrence of an accident to a stagecoach gave rise to a prima facie presumption in favor of a passenger that the coachman was negligent. (*Fairchild* v. *California Stage Co.* (1859), 13 Cal. 599, 603-605; see, also, *Boyce* v. *California Stage Co.,* 25 Cal. 460, 467-469; *Bush* v. *Barnett,* 96 Cal. 202, 203-204 [31 P. 2].)

556 [40 P. 1020, 48 Am.St.Rep. 146, 29 L.R.A. 718], that the doctrine is based on "the experience of the past" and the theory that what "has happened in the past, under the same conditions, will probably happen in the future, and ordinary and probable results will be presumed to take place until the contrary is shown." In another early case it was said: "The bed-rock of this principle . . . is that of probabilities. . . ." (*Harrison* v. *Sutter Street Ry. Co.*, 134 Cal. 549, 552 [66 P. 787, 55 L.R.A. 608].) Since the decision of the Judson case in 1895, the words "probably," "probable," "probability" and "probabilities" have been repeatedly used in this connection, both as part of the rule and as the basic reason, or one of the reasons, for it. (*Harrison* v. *Sutter Street Ry. Co.*, supra; *Osgood* v. *Los Angeles etc. Co.*, 137 Cal. 280, 282 [70 P. 169, 92 Am.St.Rep. 171] ; *Smith* v. *O'Donnell*, 215 Cal. 714, 722 [12 P.2d 933] ; *Godfrey* v. *Brown*, 220 Cal. 57, 66 [29 P.2d 165, 93 A.L.R. 1072] ; *Honea* v. *City Dairy, Inc.*, 22 Cal.2d 614, 617, 620, 621 [140 P.2d 369] ; *Leet* v. *Union Pac. R. Co.*, 25 Cal.2d 605, 619-621 [155 P.2d 42, 158 A.L.R. 1008] ; *LaPorte* v. *Houston*, 33 Cal.2d 167, 169 [199 P.2d 665] ; *Gordon* v. *Aztec Brewing Co.*, 33 Cal.2d 514, 517 [203 P.2d 522] ; *Cavero* v. *Franklin etc. Benev. Soc.*, 36 Cal.2d 301, 312-314 [223 P.2d 471] ; *Raber* v. *Tumin*, 36 Cal. 2d 654, 659-661 [226 P.2d 574].) In the LaPorte case, 33 Cal.2d at page 169, we said, after assuming that defendants were in control at the time of the accident, that "the applicability of the doctrine of res ipsa loquitur depends on whether it can be said, in the light of common experience, that the accident was more likely than not the result of their [defendants'] negligence. [Citations.] 'Where no such balance of probabilities in favor of negligence can be found, res ipsa loquitur does not apply.' " In determining whether such a probability exists with regard to a particular occurrence, the courts have relied both upon common knowledge and the testimony of expert witnesses. (See, for example, *Cavero* v. *Franklin etc. Benev. Soc.*, 36 Cal.2d 301, 309 [223 P.2d 471] ; *Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453, 459, 460 [150 P.2d 436] ; *Juchert* v. *California Water Service Co.*, 16 Cal.2d 500, 515 [106 P.2d 886] ; *Judson* v. *Giant Powder Co.*, 107 Cal. 549, 561 [40 P. 1020, 48 Am.St.Rep. 146, 29 L.R.A. 718].)

All of the cases hold, in effect, that it must appear, either as a matter of common experience or from evidence in the case, that the accident is of a type which probably would

not happen unless someone was negligent. In the absence of such a probability there would be no basis for an inference of negligence which would serve to take the place of evidence of some specific negligent act or omission. ▮ The defendant, of course, should not be liable unless it appears from all the facts and circumstances that there is a sufficient causal connection between his conduct and the plaintiff's injury, and it has been held that res ipsa loquitur will not apply if it is equally probable that the negligence was that of someone other than the defendant. (*LaPorte* v. *Houston,* 33 Cal.2d 167, 169-170 [199 P.2d 665]; *Hernandez* v. *Southern Calif. Gas Co.,* 213 Cal. 384, 387-388 [2 P.2d 360]; *Olson* v. *Whitthorne & Swan,* 203 Cal. 206, 208-209 [263 P. 518, 58 A.L.R. 129]; *Tower* v. *Humboldt Transit Co.,* 176 Cal. 602, 607 [169 P. 227].) ▮ As said in the LaPorte case, *supra* (33 Cal. 2d at p. 170), the doctrine is not applicable where it is "at least equally probable that the accident was caused by some fault . . . for which defendants were not liable" and where "it cannot be said that it is more likely than not that the accident was caused by the negligence of *defendants.*" (Italics added.) In dealing with this problem the courts have usually said that the defendant must have "management" or "control" of the agency or instrumentality which caused the injury. (See, for example, *Raber* v. *Tumin,* 36 Cal.2d 654, 659 [226 P.2d 574]; *Hinds* v. *Wheadon,* 19 Cal.2d 458, 461 [121 P.2d 724]; *Michener* v. *Hutton,* 203 Cal. 604, 607, 609 [265 P. 238, 59 A.L.R. 480]; *Olson* v. *Whitthorne & Swan,* 203 Cal. 206, 208 [263 P. 518, 58 A.L.R. 129]; *Judson* v. *Giant Powder Co.,* 107 Cal. 549, 556 [40 P. 1020, 48 Am.St.Rep. 146, 29 A.L.R. 718]; 19 Cal.Jur., 708-709.) It has been stated that the purpose of this requirement is to eliminate the possibility that the accident was caused by someone other than the defendant. (See *Escola* v. *Coca Cola Bottling Co.,* 24 Cal.2d 453, 458 [150 P.2d 436]; *Honea* v. *City Dairy, Inc.,* 22 Cal.2d 614, 618 [140 P.2d 369]; 1 Shearman and Redfield on Negligence [rev.ed., 1941], pp. 153-154; Prosser on Torts [1941], p. 298.) Accordingly, its use is merely to aid the courts in determining whether, under the general rule, it is more probable than not that the injury was the result of the *defendant's* negligence.

▮ The requirement of control is not an absolute one. Although, as we have seen, the doctrine will not ordinarily apply if it is equally probable that the negligence was that of someone other than the defendant, the plaintiff need not exclude

all other persons who might possibly have been responsible where the defendant's negligence appears to be the more probable explanation of the accident. (See *Helms* v. *Pacific Gas & Electric Co.*, 21 Cal.App.2d 711, 713-714 [70 P.2d 247] [third person might have tampered with electrolier located on public street]; *Van Horn* v. *Pacific Refining & R. Co.*, 27 Cal.App. 105, 108-110 [148 P. 951] [third person might have loosened pipe cap]; Prosser, *Res Ipsa Loquitur in California* [*1949*], 37 Cal.L.Rev. 183, 197-201.) ■ Further, it is settled that the fact that the accident occurs some time after the defendant relinquishes control of the instrumentality which causes the accident does not preclude application of the doctrine provided there is evidence that the instrumentality had not been improperly handled by the plaintiff or some third person, or its condition otherwise changed, after control was relinquished by the defendant. (*Gordon* v. *Aztec Brewing Co.*, 33 Cal.2d 514, 517-518 [203 P.2d 522]; *Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453, 458-459 [150 P.2d 436]; see *Honea* v. *City Dairy, Inc.*, 22 Cal.2d 614, 617-618 [140 P.2d 369].) ■ Of course, it must appear that the defendant had sufficient control or connection with the accident that it can be said that he was more probably than not the person responsible for plaintiff's injury.

■ Some cases have stated that the accident must not have been due to any voluntary action or contribution on the part of the plaintiff. (See *Ybarra* v *Spangard*, 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258]; *Raber* v. *Tumin*, 36 Cal.2d 654, 659 [226 P.2d 574]; *Cavero* v. *Franklin etc. Benev. Soc.*, 36 Cal.2d 301, 309 [223 P.2d 471]; *Druzanich* v. *Criley*, 19 Cal.2d 439, 444 [122 P.2d 53]; 9 Wigmore on Evidence [3d ed., 1940], § 2509.) This is allied to the condition of control by the defendant and has also been employed as a means of showing that the defendant, rather than the plaintiff, had control and was responsible for the injury. (See *Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453, 458 [150 P.2d 436].) It should not be confused with the problem of contributory negligence, as to which defendant has the burden of proof, and its purpose, like that of control by the defendant, is merely to assist the court in determining whether it is more probable than not that the defendant was responsible for the accident. ■ As recently held by the Supreme Court of Oregon in a well reasoned opinion, a plaintiff may properly rely upon res ipsa loquitur even though he has participated in the events leading to the accident if the evidence

excludes his conduct as the responsible cause. (*Gow* v. *Multnomah Hotel*, 191 Ore. 45 [224 P.2d 552, 555-560, 228 P.2d 791].)

Another factor which some of the cases have considered in applying the doctrine is that the defendant may have superior knowledge of what occurred and that the chief evidence of the cause of the accident may be accessible to the defendant but inaccessible to the plaintiff. (See *Ybarra* v. *Spangard*, 25 Cal.2d 486, 490 [154 P.2d 687, 162 A.L.R. 1258]; *Mudrick* v. *Market Street Ry. Co.*, 11 Cal.2d 724, 731-732 [81 P.2d 950, 118 A.L.R. 533]; *Anderson* v. *I. M. Jameson Corp.*, 7 Cal.2d 60, 64 [59 P.2d 962]; *Smith* v. *O'Donnell*, 215 Cal. 714, 722 [12 P.2d 933]; *Kenney* v. *Antonetti*, 211 Cal. 336, 339 [295 P. 341]; *Connor* v. *Atchison etc. Ry. Co.*, 189 Cal. 1, 5 [207 P. 378, 22 A.L.R. 1462]; *O'Connor* v. *Mennie*, 169 Cal. 217, 225-226 [146 P. 674]; *Steele* v. *Pacific Elec. Ry. Co.*, 168 Cal. 375, 378-379 [143 P. 718]; *Housel* v. *Pacific Elec. Ry. Co.*, 167 Cal. 245, 249-250 [139 P. 73, Ann. Cas. 1915C 665, 51 L.R.A.N.S. 1105]; *Wyatt* v. *Pacific Elec. Ry. Co.*, 156 Cal. 170, 174 [103 P. 892]. See, also, Palmer, *A Strange Misplacement of Legislative Power*, 25 Cal.State Bar J. 440, 444.) ▮ It seems clear, however, that the doctrine may be applied even though the defendant is not in a better position than plaintiff to explain what occurred if it appears more probable than not that the injury resulted from negligence on the part of defendant. (See *Leet* v. *Union Pac. R. Co.*, 25 Cal.2d 605, 619, 620 [155 P.2d 42, 158 A.L.R. 1008]; *cf. Parker* v. *James Granger, Inc.*, 4 Cal.2d 668, 675 [52 P.2d 226]; see Prosser, *Res Ipsa Loquitur in California [1949]*, 37 Cal.L.Rev. 183, 202-204.)

▮ The doctrine has been applied in certain specific unusual situations where there is clearly a probability that one or more of several persons was negligent, but where the plaintiff is unable to point out which of them is responsible for his injury. For example, the doctrine has been applied against a common carrier and in favor of its passenger who was injured in a collison between the public conveyance and another vehicle. The reason given for applying the doctrine in such cases is "that in view of the very high degree of care essential under the law on the part of a carrier of persons toward those who are its passengers, such a collision would not happen in the ordinary course of events if the carrier exercised such care, and that ordinarily when such an accident occurs, it is due to failure on the part of the

person operating the car to use the proper degree of care in so operating it, or, in other words, to 'the manner in which defendant used or directed the instrumentality under its control.' '' (*Housel* v. *Pacific Elec. Ry. Co.*, 167 Cal. 245, 249 [139 P. 73, Ann.Cas.1915C 665, 51 L.R.A.N.S. 1105]; *Smith* v. *O'Donnell*, 215 Cal. 714, 723 [12 P.2d 933].)

Another unusual situation in which the doctrine was applied although plaintiff could not prove which of several defendants actually caused his injuries is found in *Ybarra* v. *Spangard*, 25 Cal.2d 486 [154 P.2d 687, 162 A.L.R. 1258]. In that case a patient received injuries while unconscious during the course of medical treatment, and we held that all persons having any control over his body could properly be called upon to give an explanation of their conduct. (See, also, *Dierman* v. *Providence Hospital*, 31 Cal.2d 290, 292 [188 P.2d 12] ; *Cavero* v. *Franklin etc. Benev. Soc.*, 36 Cal. 2d 301, 308 et seq. [223 P.2d 471].) While it did not appear that any particular defendant had exclusive control or that it was more probable than not that the injury resulted from negligence on the part of each individual defendant, the court relied on the fact that the defendants had superior knowledge and that there was a special relationship between the parties since the plaintiff had submitted himself to the defendants' care.

The doctrine may, of course, be applied against several defendants where the circumstances are such as to show a probability that all of them were negligent. (See Prosser, *Res Ipsa Loquitur in California* [*1949*], 37 Cal.L.Rev. 183, 207-208; *cf. Raber* v. *Tumin*, 36 Cal.2d 654 [226 P.2d 574] ; *Godfrey* v. *Brown*, 220 Cal. 57 [29 P.2d 165, 93 A.L.R. 1072].)

In summary, it appears from the foregoing that, as a general rule, res ipsa loquitur applies where the accident is of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone and that the defendant is probably the person who is responsible. In determining whether such probabilites exist with regard to a particular occurrence, the courts have relied both upon common knowledge and the testimony of expert witnesses, and they have considered the circumstances relating to the accident in each particular case, such as the extent of control exercised by the defendant, the plaintiff's own conduct, the likelihood of negligence by some third person, and, in some situations, evidence that the defendant is better able than the plaintiff to explain what happened. All of these

matters have been treated as aids to help the courts in determining whether the accident was of such a nature that the injury was more probably than not the result of the defendant's negligence.

In the present case, it seems reasonably clear that the accident probably would not have occurred without negligence by someone. The bottle may have been improperly handled in such a manner as to damage it; there may have been a failure to make a proper inspection for defects; it could have been filled with an excessive charge of gas; or it might have been improperly manufactured. Common experience indicates that it would be unreasonable to hold that a bottle of carbonated liquid would be likely to explode if all persons who had anything to do with it had exercised proper care.

A more difficult question is whether we can say, under all the circumstances, that the accident was of such a nature that it warrants a reasonable inference that defendant, rather than someone else, was responsible for the unknown negligent act or omission which caused the explosion. It is undisputed that defendant had control over the bottle and its contents for a substantial portion of the time during which the defect which caused the explosion might either have been created or discovered. Defendant did not have actual control after the bottle was delivered to the restaurant nor while it was being manufactured, and it is, of course, possible that the bottle might have exploded because of improper handling after delivery or because it was improperly manufactured.

Plaintiff, however, introduced evidence which is sufficient to warrant an inference that the bottle was not mistreated subsequent to the time it was placed in the cooler by defendant's driver. The cooler, which was covered by a lid, appears to have been a safe and proper container for storage and refrigeration of carbonated beverages. Plaintiff did not handle any of the bottles which were delivered by defendant, and the bottle simply exploded without being touched when plaintiff reached into the cooler. Although some of the bottles were removed by plaintiff's employees during the interval between the delivery and the accident, the construction of the cooler was such that the bottles would ordinarily be lifted straight up through the top without disturbing any of those remaining. It is not necessary that plaintiff eliminate every remote possibility of injury to the bottle after defendant relinquished control, and it could reasonably be

inferred that the bottle which exploded was not injured by plaintiff or any third person after it was left by defendant's driver. (See *Gordon* v. *Aztec Brewing Co.*, 33 Cal.2d 514, 518 [203 P.2d 522] ; *Escola* v. *Coca Cola Bottling Co.*, 24 Cal. 2d 453, 458 [150 P.2d 436].) Since sound and properly prepared bottles of carbonated beverages will not explode when carefully handled (*Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453, 459 [150 P.2d 436] ; *cf*. *Gordon* v. *Aztec Brewing Co.*, 33 Cal.2d 514, 517 [203 P.2d 522]), and since there is evidence that the bottle was kept in a safe place after delivery by defendant, the jury could properly find that the bottle was in some manner defective when defendant's employee placed it in the cooler.

We must, therefore, examine the possible reasons why the bottle was defective when delivered to plaintiff, ascertain which would and which would not be attributable to the negligence of defendant, and determine whether we can say that, in the light of common experience, the defective condition more probably than not resulted from a cause or causes for which defendant is responsible. Some of the possible causes could clearly be attributed to negligence on the part of defendant. Defendant would, of course, be liable for any defect in the glass which may have been caused by improper bottling procedure or by mishandling by its employees during preparation for delivery or during actual delivery. An excessive internal pressure might well have caused the explosion, and the charging of the bottle with gas was entirely within the control of defendant. In *Honea* v. *City Dairy, Inc.*, 22 Cal.2d 614, 622 [140 P.2d 369], we recognized that in applying the doctrine of res ipsa loquitur a distinction could be made between cases involving bottles of milk and those dealing with bottles of carbonated beverages. One who bottles liquids under pressure necessarily must adopt different methods of procedure and take precautionary steps not required of one bottling inert liquids. We held in *Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453, 459 [150 P.2d 436], that since "it is a matter of common knowledge that an overcharge would not ordinarily result without negligence, it follows under the doctrine of res ipsa loquitur that if the bottle was in fact excessively charged an inference of defendant's negligence would arise."

Further, the explosion may have resulted from a visible defect in the glass bottle, and the Escola case is likewise authority for the proposition that an inference of negligence

would arise from the failure of the bottler to discover defects of this type, since they would normally be discovered upon a reasonable inspection. (24 Cal.2d at pp. 459-460.)

The evidence does not show whether the bottle which exploded was a new or a used one. In the Escola case (24 Cal.2d at pp. 460-461), we held that if defects develop in used bottles which are not discoverable upon visual inspection, there is a duty upon the bottler of carbonated beverages to make appropriate tests before they are refilled, and that if such tests are not commercially practicable the bottles should not be re-used. ▇ The only suggested possible cause of the defective condition of the bottle which might not be attributable to defendant's negligence is that the bottle may have been a new one and may have contained latent defects which the bottler had no practicable means of discovering. (See *Escola* v. *Coca Cola Bottling Co.,* 24 Cal.2d 453, 460 [150 P.2d 436] ; *Honea* v. *City Dairy, Inc.,* 22 Cal.2d 614, 618-621 [140 P.2d 369].) It is our opinion, however, that the existence of this possibility is insufficient to prevent application of the doctrine of res ipsa loquitur.

▇ In view of the foregoing, it seems clear that there is a balance of probabilities pointing to defendant's negligence as the most likely explanation of the accident, and plaintiff is therefore entitled to invoke the aid of the doctrine of res ipsa loquitur. This conclusion is in accord with decisions in many other jurisdictions where the doctrine has been applied under circumstances similar to those present here. (See *Groves* v. *Florida Coca-Cola Bottling Co.,* —— Fla. —— [40 So.2d 128] ; *Starke Coca-Cola Bottling Co.* v. *Carrington,* 159 Fla. 718 [32 So.2d 583] ; *Payne* v. *Rome Coca-Cola Bottling Co.,* 10 Ga.App. 762 [73 S.E. 1087] ; *Joly* v. *Jones,* 115 Vt. 174 [55 A.2d 181] ; *Honea* v. *Coca Cola Bottling Co.,* 143 Tex. 272 [183 S.W.2d 968, 160 A.L.R. 1445] ; *Ortego* v. *Nehi Bottling Works,* 199 La. 599 [6 So.2d 677] ; *Bradley* v. *Conway Springs Bottling Co.,* 154 Kan. 282 [118 P.2d 601] ; *MacPherson* v. *Canada Dry Ginger Ale, Inc.,* 129 N.J.L. 365 [29 A.2d 868].)

▇ Defendant contends that there was a conflict in the evidence as to whether plaintiff was injured by a Coca Cola bottle or by a bottle of a different brand and that the trial court improperly took the determination of this question from the jury when it instructed that the happening of the acci-

dent gave rise to an inference of negligent conduct "on the part of the defendant." The jury was told, however, that this instruction is based upon a doctrine which may be applied only where "some certain instrumentality, by which injury to the plaintiff was proximately caused, was in the possession and under the exclusive control of the defendant at the time the cause of the injury was set in motion. . . ." It thus appears that the jury could not have been misled in the manner suggested by defendant.

The judgment is affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.